## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**

**Grand Jury Sworn in on November 3, 2016**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | **GRAND JURY ORIGINAL** |
| | : | |
| **GINA RITA RUSSELL,** | : | **VIOLATIONS:** |
| **TONY JOHN EVANS,** | : | |
| **ROBERT EVANS,** | : | **18 U.S.C. § 371 (Conspiracy to Commit** |
| **CORRY BLUE EVANS,** | : | **Extortion, Bank Fraud, and Wire Fraud)** |
| also known as "Blue," | : | **18 U.S.C. § 1951(a) (Interference with** |
| **ARCHIE KASLOV, and** | : | **Interstate Commerce by Extortion)** |
| **CANDY EVANS,** | : | **18 U.S.C. § 1344(2) (Bank Fraud)** |
| also known as "Candice Evans," | : | **18 U.S.C. § 1343 (Wire Fraud)** |
| "Candice Kaslov," "Ronnie Evans," and | : | **18 U.S.C. § 1956(h) (Conspiracy to** |
| "Ronnie Kaslov," | : | **Commit Money Laundering)** |
| | : | **18 U.S.C. § 1957 (Engaging in Monetary** |
| **Defendants.** | : | **Transactions in Property Derived From** |
| | : | **Specified Unlawful Activity)** |
| | : | **18 U.S.C. § 1512(b)(3) (Tampering with a** |
| | : | **Witness by Corrupt Persuasion or** |
| | : | **Misleading Conduct)** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting;** |
| | : | **Causing an Act to be Done)** |
| | : | |
| | : | **FORFEITURE ALLEGATION:** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(C); 18 U.S.C.** |
| | : | **§ 982(a)(1) and (a)(2)(A); 21 U.S.C.** |
| | : | **§ 853(p); 28 U.S.C. § 2461(c)** |

## INDICTMENT

The Grand Jury charges that:

At all times material to this Indictment:

## Introduction

1.      Defendant GINA RITA RUSSELL resided in New York, New York, and

California.

2.      Defendant TONY JOHN EVANS resided in New York, New York, and maintained a personal bank account at Santander Bank (account number xxxxxx4941).

3.      Defendant ROBERT EVANS resided in New York, New York.

4.      Defendant CORRY BLUE EVANS, also known as "Blue," resided in New York, New York.

5.      Defendant ARCHIE KASLOV resided in New York, New York.

6.      Defendant CANDY EVANS, also known as "Candice Evans, "Candice Kaslov," "Ronnie Evans," and "Ronnie Kaslov," resided in New York, New York.

7.      Hollie Ann Nadel advertised massage services on Backpage.com, and provided those services in Maryland and the District of Columbia.  Hollie Ann Nadel maintained bank accounts at Bank of America (account number xxxxxxxx3147), TD Bank (account number xxxxxx1860), and TD Bank (account number xxxxxx4690).

8.      Daniel Zancan resided in Maryland, and worked as the Chief Financial Officer for R&R Mechanical Contractors, Inc., an HVAC and plumbing construction company located in the District of Columbia.  Daniel Zancan met Hollie Ann Nadel through one of Hollie Ann Nadel's advertisements on Backpage.com.  Daniel Zancan maintained a personal bank account at SunTrust Bank (account number xxxxxxxxx8370).

9.      James Padilla met Hollie Ann Nadel through one of Hollie Ann Nadel's advertisements on Backpage.com.  James Padilla maintained a bank account at Bank of America (account number xxxxxxxx8463).  James Padilla owned and operated a trial and litigation support business which maintained a business bank account at JP Morgan Chase (account number xxxxx1097).

10.     Individual A met Hollie Ann Nadel through one of Hollie Ann Nadel's advertisements on Backpage.com.  Individual A maintained a bank account at Capital One Bank (account number xxxxxx4218).

11.     R&R Mechanical Contractors, Inc. maintained a bank account for its Operating Account at SunTrust Bank (account number xxxxxxxxx3291).

12.     R&R Mechanical Contractors, Inc. maintained a bank account for its Payroll Account at SunTrust Bank (account number xxxxxxxxx3358).

13.     R&R Mechanical Contractors, Inc. maintained a bank account for its Service Division Account at SunTrust Bank (account number xxxxxxxxx3267).

14.     R&R Mechanical Contractors, Inc. maintained a bank account for its Service Payroll Account at SunTrust Bank (account number xxxxxxxxx3366).

15.     R&R Mechanical Contractors, Inc. maintained a bank account for its subsidiary company, 2902 Bladensburg Road LLC, at BB&T Bank (account number xxxxxx4982).

16.     As the Chief Financial Officer of R&R Mechanical Contractors, Inc., Daniel Zancan had access to and signatory authority over the following R&R Mechanical Contractors, Inc.'s and its subsidiary company, 2902 Bladensburg Road LLC's bank accounts for the purpose of the operation of the company's business:  (a) the Operating Account at SunTrust Bank (account number xxxxxxxxx3291), (b) the Payroll Account at SunTrust Bank (account number xxxxxxxxx3358), (c) the Service Division Account at SunTrust Bank (account number xxxxxxxxx3267), (d) the Service Division Payroll Account at SunTrust Bank (account number xxxxxxxxx3366), and (e) the 2902 Bladensburg Road LLC account at BB&T Bank (account number xxxxxx4982).  R&R Mechanical Contractors, Inc.'s and 2902 Bladensburg Road LLC's financial records and checkbooks were maintained at their offices in the District of Columbia.

17.     Landman & Company is located in Gaithersburg, Maryland, and maintained a bank account at Wells Fargo Bank (account number xxxxxx8690).

18.     Gaithersburg Coin Exchange, Inc. is located in Gaithersburg, Maryland, and maintained a bank account at Bank of America (account number xxxxxx5338).

19.     Golden Eagle Coins is located in Laurel, Maryland, and maintained a bank account at PNC Bank (account number xxxxxx1264).

20.     The Bullion Bank is located in Chantilly, Virginia, and maintained a bank account at Capital One Bank (account number xxxxxx9962).

21.     Bullion Exchanges, LLC, is located in New York, New York, and maintained a bank account at TD Bank (account number xxxxxx3594).

22.     SunTrust Bank and BB&T Bank were financial institutions as defined in Title 18, United States Code, Section 20, with branches in the District of Columbia and elsewhere, with accounts insured by the Federal Deposit Insurance Corporation.

23.     R&R Mechanical Contractors, Inc., 2902 Bladensburg Road LLC, SunTrust Bank, and BB&T Bank, operated in, and their activities affected, interstate commerce.

24.     Landman & Company, Gaithersburg Coin Exchange, Inc., Golden Eagle Coins, The Bullion Bank, and Bullion Exchanges, LLC were financial institutions as defined in Title 18, United States Code, Section 1956(c)(6)(A) and Title 31, United States Code, Section 3142(a)(2)(N).

25.     Modell Collateral Loans, Inc. was a financial institution as defined in Title 18, United States Code, Section 1956(c)(6)(A) and Title 31, United States Code, Section 3142(a)(2)(O).

26.     In 2015, James Padilla responded to Hollie Ann Nadel's Internet advertisement for massage services.  James Padilla and Hollie Ann Nadel then began a sexual relationship.

27.     In 2016, Individual A responded to Hollie Ann Nadel's Internet advertisement for massage services.  Individual A and Hollie Ann Nadel then began a sexual relationship.

28.     In 2016, Daniel Zancan responded to Hollie Ann Nadel's advertisement for massage services on Backpage.com.  Daniel Zancan and Hollie Ann Nadel then began a romantic relationship.

## COUNT ONE
### (Conspiracy to Commit Extortion, Bank Fraud, and Wire Fraud)

29.     The allegations set forth in paragraphs 1 through 28 of this Indictment are realleged and incorporated by reference.

30.     From in or about November 2016 through in or about April 2017, within the District of Columbia and elsewhere, Defendants GINA RITA RUSSELL, TONY JOHN EVANS, ROBERT EVANS, CORRY BLUE EVANS, and ARCHIE KASLOV did knowingly and willfully combine, conspire, confederate and agree together and with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.   to knowingly and unlawfully obstruct, delay, and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951;

b.   to knowingly and unlawfully execute and attempt to execute a scheme and artifice to defraud, and to obtain monies, funds, credits, assets, securities, and other property owned by, and under the custody and control of SunTrust Bank and BB&T Bank, which were financial institutions with deposits insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, and promises; and

c.   to knowingly and unlawfully devise a scheme and artifice to defraud R&R Mechanical Contractors, Inc. and 2902 Bladensburg Road LLC and to obtain money and property of R&R Mechanical Contractors, Inc. and 2902 Bladensburg Road LLC by means of materially false and fraudulent pretenses, representations, and promises.

## The Purposes of the Conspiracy

31.     It was a purpose of the conspiracy for the defendants to enrich themselves through the extortion and attempted extortion of Daniel Zancan.

32.     It was also a purpose of the conspiracy for the defendants to enrich themselves by defrauding SunTrust Bank and BB&T Bank.

33.     It was also a purpose of the conspiracy for the defendants to enrich themselves by defrauding R&R Mechanical Contractors, Inc. and 2902 Bladensburg Road LLC.

## Manner and Means of the Conspiracy

34.     The manner and means by which these purposes were carried out included the following:

a.   Hollie Ann Nadel and other co-conspirators told Daniel Zancan, James Padilla, and Individual A that Hollie Ann Nadel purportedly owed large sums of money to the other co-conspirators and that the other co-conspirators would injure, kidnap, and unlawfully confine her unless the debt was paid.

b.   The conspirators threatened to injure Daniel Zancan and his family unless Daniel Zancan paid the conspirators.

c.   The conspirators caused Daniel Zancan to obtain money from R&R Mechanical Contractors, Inc. and 2902 Bladensburg Road LLC under false pretenses to make payments to the conspirators.

d.   The conspirators made false statements and provided false documents to financial institutions to conceal the true nature of payments from Daniel Zancan to conspirators.

## Overt Acts

35.     In furtherance of the conspiracy, and in order to effect the objects thereof, the defendants, and co-conspirators not indicted herein who are both known and unknown to the Grand

Jury, in various combinations, directly and indirectly, within the District of Columbia and elsewhere, committed overt acts, including, but not limited to, the following:

a.      In or about November 2016, Defendant GINA RITA RUSSELL instructed Hollie Ann Nadel to falsely represent to Backpage clients, including Daniel Zancan, and other acquaintances that she was in distress and physical danger and would be physically harmed unless she repaid a large debt.

b.      In or about January 2017, Hollie Ann Nadel introduced Daniel Zancan to James Padilla and Individual A.

c.      On or about January 10, 2017, Hollie Ann Nadel and Daniel Zancan traveled to Tourneau in Arlington, Virginia where Hollie Ann Nadel caused Daniel Zancan to apply for credit to purchase luxury watches to avoid physical harm to Hollie Ann Nadel for failure to repay her purported debt.  During the visit, Hollie Ann Nadel communicated by cellular telephone with Defendant GINA RITA RUSSELL, who directed Hollie Ann Nadel on which watches to purchase.

d.      On or about January 10, 2017, Defendant GINA RITA RUSSELL demanded approximately $120,000 from Hollie Ann Nadel.

e.      On or about January 11, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Operating Account at SunTrust Bank (account number xxxxxxxxx3291) in the amount of $110,616.00 to Hollie Ann Nadel's account at Bank of America (account number xxxxxxxx3147).

f.      On or about January 12, 2017, Hollie Ann Nadel traveled to Bank of America in Rockville, Maryland and obtained a cashier's check in the amount of $110,010.00 from Hollie Ann Nadel's account at Bank of America (account number xxxxxxxx3147).

g.          On or about January 12, 2017, Defendant CORRY BLUE EVANS communicated by cellular telephone with a District Manager of PLS Financial Services in New York, to arrange for his "sister" to cash a large check at PLS.

h.          On or about January 13, 2017, Hollie Ann Nadel emailed screenshots of her Bank of America account showing the wire transfer from R&R Mechanical Contractors, Inc.'s Operating Account at SunTrust Bank (account number xxxxxxxxx3291) in the amount of $110,616.00 to an employee of PLS Financial Services in New York.

i.          On or about January 13, 2017, Defendant GINA RITA RUSSELL texted Defendant CORRY BLUE EVANS photos of the front and back of the cashier's check in the amount of $110,010.00 in the name of Hollie Ann Nadel and a screenshot of the location of the Bank of America in Rockville, Maryland where Hollie Ann Nadel obtained the cashier's check.

j.          On or about January 13, 2017, Defendant GINA RITA RUSSELL sent Hollie Ann Nadel an instant message instructing Hollie Ann Nadel as to what to say when cashing the check.

k.          On or about January 13, 2017, Hollie Ann Nadel traveled to New York, New York with the cashier's check in the amount of $110,010.00.

l.          On or about January 13, 2017, Defendants CORRY BLUE EVANS and ROBERT EVANS, and Hollie Ann Nadel went to PLS Financial Services in New York and cashed the cashier's check in the amount of $110,010.00.  Hollie Ann Nadel provided the cash to Defendants CORRY BLUE EVANS and ROBERT EVANS.

m.          On or about January 13, 2017, Defendant ARCHIE KASLOV transferred $11,400 in proceeds of his criminal activity to a pawn dealer in New York for the purchase of watches and jewelry.

n.      On or about January 14, 2017, Defendant GINA RITA RUSSELL demanded $350,000 from Hollie Ann Nadel.

o.      On or about January 17, 2017, Defendant ROBERT EVANS transferred $20,900 in proceeds of his criminal activity to a pawn dealer in New York for the purchase of a watch.

p.      On or about January 17, 2017, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., Hollie Ann Nadel caused Daniel Zancan to remove check number 1266 from R&R Mechanical Contractors, Inc.'s check register for its Payroll Account at SunTrust Bank (account number xxxxxxxxx3358) and to write a check in the amount of $171,170.00 payable to "Daniel Zancan."  Hollie Ann Nadel caused Zancan to write on the face of the check that the purpose of the check was "Replace lost check 2016 xmas."  Daniel Zancan deposited the $171,170.00 check into his account at SunTrust Bank (account number xxxxxxxxx8370).

q.      On or about January 17, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $5,600.00 to James Padilla's account at Bank of America (account number xxxxxxxx8463).

r.      On or about January 17, 2017, from 2902 Bladensburg Road LLC's office located at 2902 Bladensburg Road, N.E., Washington, D.C., Hollie Ann Nadel caused Daniel Zancan to remove check number 121 from 2902 Bladensburg Road LLC's check register for its bank account at BB&T Bank (account number xxxxxx4982) and to write a check in the amount of $5,000 payable to "Daniel Zancan."  On or about January 18, 2017, Daniel Zancan deposited the $5,000.00 check into his account at SunTrust Bank (account number xxxxxxxxx8370).  On or about that same date, Daniel Zancan wrote a check from his account at

SunTrust Bank (account number xxxxxxxxx8370) in the same amount of $5,000 payable to "Daniel Zancan."

       s.        On or about January 18, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $179,860.00 to Hollie Ann Nadel's account at TD Bank (account number xxxxxx1860).

       t.        On or about January 19, 2017, from 2902 Bladensburg Road LLC's office located at 2902 Bladensburg Road, N.E., Washington, D.C., Hollie Ann Nadel caused Daniel Zancan to remove check number 122 from 2902 Bladensburg Road LLC's check register for its bank account at BB&T Bank (account number xxxxxx4982) and to write a check in the amount of $3,000 payable to Hollie Ann Nadel.

       u.        On or about January 19, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from his account at SunTrust Bank (account number xxxxxxxxx8370) in the amount of $171,100.00 to Hollie Ann Nadel's account at TD Bank (account number xxxxxx1860).  These wired funds were derived from check number 1266 from R&R Mechanical Contractors, Inc.'s check register for its Payroll Account at SunTrust Bank (account number xxxxxxxxx3358) in the amount of $171,170.00 payable to "Daniel Zancan."

       v.        On or about January 19, 2017, Hollie Ann Nadel obtained cashier's checks in the amounts of $250,000.00 and $100,000.00 from Hollie Ann Nadel's account at TD Bank (account number xxxxxx1860) in Gaithersburg, Maryland.

       w.        On or about January 19, 2017, Defendant GINA RITA RUSSELL sent an instant message to Hollie Ann Nadel instructing Hollie Ann Nadel to "Send me a picture of the note arise letter[.]"

x.          On or about January 19, 2017, Defendant GINA RITA RUSSELL texted Defendant CORRY BLUE EVANS photos of the cashier's checks in the amounts of $250,000.00 and $100,000.00.

y.          On or about January 19, 2017, Defendant GINA RITA RUSSELL texted Defendant CORRY BLUE EVANS a photo of a letter from TD Bank explaining that Hollie Ann Nadel visited TD Bank to purchase official checks.

z.          On or about January 19, 2017, Defendant GINA RITA RUSSELL texted Defendant ARCHIE KASLOV photos of the cashier's checks in the amounts of $250,000.00 and $100,000.00.

aa.         On or about January 19, 2017, Hollie Ann Nadel sent an instant message to Defendant GINA RITA RUSSELL with Daniel Zancan's personal cell phone number.

bb.         On or about January 19, 2017, Hollie Ann Nadel traveled by Amtrak train from Washington, D.C. to New York, New York with the cashier's checks in the amounts of $250,000.00 and $100,000.00.

cc.         On or about January 19, 2017, Hollie Ann Nadel texted Daniel Zancan's name, personal cell phone number, and the name of his employer to Defendant GINA RITA RUSSELL.

dd.         On or about January 19, 2017, Hollie Ann Nadel texted Defendant CORRY BLUE EVANS copies of the SunTrust bank outgoing wire receipts for the wires from Daniel Zancan.

ee.         On or about January 19, 2017, Hollie Ann Nadel traveled to PLS Financial Services in New York to cash the cashier's checks in the amounts of $250,000.00 and $100,000.00.

ff.      On or about January 19, 2017, after PLS Financial Services raised questions about the source of the funds, Defendants GINA RITA RUSSELL and CORRY BLUE EVANS directed Hollie Ann Nadel to create a false story and fraudulent documents to make wire transfers and checks appear legitimate.

gg.      On or about January 19, 2017, Hollie Ann Nadel caused Daniel Zancan to write a letter, on R&R Mechanical Contractors, Inc.'s letterhead, falsely claiming that his $171,800 and $179,800 wire transfers to Hollie Ann Nadel were "equity distributions of a minority interest in a closely held corporation" and to email this letter to a District Manager of PLS Financial Services in New York and Hollie Ann Nadel.  Hollie Ann Nadel forwarded Daniel Zancan's email and letter to Defendant CORRY BLUE EVANS, and sent a text message to Defendant CORRY BLUE EVANS asking, "Does that work?"

hh.      On or about January 19, 2017, Defendant CORRY BLUE EVANS, Hollie Ann Nadel, and a District Manager of PLS Financial Services communicated by three-way cellular telephone call concerning cashing the cashier's checks in the amounts of $250,000.00 and $100,000.00.

ii.      On or about January 20, 2017, to further facilitate the cashing of the cashier's checks in the amounts of $250,000.00 and $100,000.00 at PLS Financial Services in New York, New York, Hollie Ann Nadel caused Daniel Zancan to create a fraudulent "Stock Purchase Agreement" between the owner of R&R Mechanical Contractors, Inc. and Hollie Ann Nadel containing fraudulent signatures of the owner of R&R Mechanical Contractors, Inc. and Hollie Ann Nadel, and to email the document to a District Manager of PLS Financial Services in New York and Hollie Ann Nadel.  Hollie Ann Nadel forwarded Daniel Zancan's email and letter to Defendant CORRY BLUE EVANS.

jj.     On or about January 20, 2017, Defendants GINA RITA RUSSELL and CORRY BLUE EVANS directed Hollie Ann Nadel to create a script of false claims to make to PLS Financial Services to get them to cash the checks, which Hollie Ann Nadel saved in her email account.

kk.     Between on or about January 20, 2017, and on or about January 23, 2017, Defendant CORRY BLUE EVANS communicated by cellular telephone with a District Manager of PLS Financial Services concerning cashing the cashier's checks in the amounts of $250,000.00 and $100,000.00.

ll.     Between on or about January 20, 2017, and on or about January 24, 2017, Hollie Ann Nadel communicated by cellular telephone with a District Manager of PLS Financial Services concerning cashing the cashier's checks in the amounts of $250,000.00 and $100,000.00.

mm.     On or about January 20, 2017, Defendant GINA RITA RUSSELL demanded $500,000 from Hollie Ann Nadel, and further indicated that Defendant TONY JOHN EVANS would assist with this demand.  Defendants GINA RITA RUSSELL and TONY JOHN EVANS discussed Defendant TONY JOHN EVANS posing as a mob boss or loan shark to Daniel Zancan.

nn.     On or about January 20, 2017, Defendant TONY JOHN EVANS and Hollie Ann Nadel communicated by cellular telephone with Daniel Zancan to threaten harm against Daniel Zancan and his family if payments were not made to co-conspirators.

oo.     On or about January 21, 2017, Hollie Ann Nadel communicated by instant message with a District Manager of PLS Financial Services in New York concerning the cashing of the cashier's checks in the amounts of $250,000.00 and $100,000.00 at PLS Financial Services in New York.

pp.       On or about January 23, 2017, Hollie Ann Nadel conducted searches on the Internet on how to obtain and spend large amounts of cash.

qq.       On or about January 23, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxx3267) in the amount of $14,500.00 to Hollie Ann Nadel's account at Bank of America (account number xxxxxxx3147).

rr.       On or about January 23, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 1268 from R&R Mechanical Contractors, Inc.'s check register for its Payroll Account at SunTrust Bank (account number xxxxxxxx3358) and to write a check in the amount of $217,500.00 payable to "Daniel Zancan."  Hollie Ann Nadel caused Zancan to write on the face of the check that the purpose of the check was "2016 Bonus Distribution."  Daniel Zancan deposited the $217,500.00 check into his account at SunTrust Bank (account number xxxxxxxx8370).  On or about that same date, Daniel Zancan obtained a cashier's check in the amount of $210,000.00 from his account at SunTrust Bank (account number xxxxxxxx8370).  Daniel Zancan cashed the cashier's check in the amount of $210,000.00 at a check cashing business in Montgomery County, Maryland.

ss.       On or about January 23, 2017, Hollie Ann Nadel, Daniel Zancan, and James Padilla agreed that Daniel Zancan and James Padilla should create and enter into a fraudulent retainer agreement whereby James Padilla's trial and litigation support business agreed to provide support to R&R Mechanical Contractors, Inc. to disguise the fact that the true purpose of the financial transactions between R&R Mechanical Contractors, Inc. and James Padilla's trial and litigation support business was to help repay Hollie Ann Nadel's purported debt so that she would not be physically harmed.

tt.        On or about January 24, 2017, Daniel Zancan drove from the Washington, D.C. metropolitan area to New York to pick up Hollie Ann Nadel and return to the Washington, D.C. metropolitan area.  As Daniel Zancan was driving in the area of PLS Financial Services, Defendant CORRY BLUE EVANS texted Defendant TONY JOHN EVANS "yo the other guy is 4block away if I text you go get out the block.  that will be my last text to you[.]"

uu.        On or about January 24, 2017, Defendants CORRY BLUE EVANS, TONY JOHN EVANS, and ROBERT EVANS, and Hollie Ann Nadel traveled to PLS Financial Services in New York, New York where Hollie Ann Nadel cashed the cashier's checks in the amounts of $250,000.00 and $100,000.00, and provided the cash to co-conspirators.

vv.        On or about January 24, 2017, Defendants ARCHIE KASLOV, CORRY BLUE EVANS, ROBERT EVANS, TONY JOHN EVANS, and GINA RITA RUSSELL used the proceeds to purchase jewelry, watches, and gold coins.

ww.        On or about January 24, 2017, Hollie Ann Nadel drafted a note, "$500,000 by Friday" and "Taxing 550 month from now", which Hollie Ann Nadel saved in her email account.

xx.        On or about January 24, 2017, Hollie Ann Nadel, Daniel Zancan, James Padilla, and Individual A agreed that Daniel Zancan would transfer funds to the bank accounts of Daniel Zancan, James Padilla, and Individual A for further conversion to cash for delivery to Hollie Ann Nadel and other co-conspirators.

yy.        On or about January 24, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $220,000.00 to James Padilla's trial and litigation support business's account at JP Morgan Chase (account number xxxxx1097).

zz.        On or about January 25, 2017, Hollie Ann Nadel caused James Padilla to obtain, from Chase Bank, five cashier's checks totaling $152,605.00 from James Padilla's trial and litigation support business payable to "Daniel Zancan."  James Padilla obtained an additional cashier's check in the amount of $51,105.00.

aaa.       On or about January 26, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $76,000.00 to Individual A's account at Capital One Bank (account number xxxxxx4218).   Using the funds wired by Daniel Zancan, Individual A obtained cash and $10,000 in money orders, which were provided to Daniel Zancan.

bbb.       On or about January 26, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from 2902 Bladensburg Road LLC's office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 123 from 2902 Bladensburg Road LLC's check register for its bank account at BB&T Bank (account number xxxxxx4982) and to write a check in the amount of $25,000.00 payable to "Cash."

ccc.       On or about January 26, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 7913806 in the amount of $25,010.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxxx4982) payable to "Cash."

ddd.       On or about January 26, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 7913808 in the amount of $25,010.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxxx4982) payable to "Cash."

eee.       On or about January 26, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 5008218764 in the amount of $25,000.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxxx4982) payable to "Daniel Zancan."

On or about January 27, 2017, Daniel Zancan deposited the $25,000.00 check into his account at SunTrust Bank (account number xxxxxxxx8370).  On or about January 26, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain a cashier's check from SunTrust Bank in the amount of $52,500.00, which Daniel Zancan cashed at Laundroland LLC in Hyattsville, Maryland.

fff.      On or about January 27, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 5008218763 in the amount of $25,000.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxxx4982) payable to "Daniel Zancan." On or about January 27, 2017, Daniel Zancan cashed the cashier's check in the amount of $25,000.00 at Gomez Check Cashing in Trenton, New Jersey.

ggg.      On or about January 27, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 7378208 in the amount of $60,010.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxxx4982) payable to "Cash."

hhh.      On or about January 27, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain from BB&T Bank an official check 10000152309 in the amount of $55,000.00.  On the face of the check, the Memo/Purchaser section stated, "2902 Bladensburg Rd LLC."  On or about January 27, 2017, Daniel Zancan cashed the cashier's check in the amount of $55,000.00 at Gomez Check Cashing in Trenton, New Jersey.

iii.      On or about January 27, 2017, Hollie Ann Nadel caused Daniel Zancan and James Padilla to cash the six cashier's checks totaling $203,710.00 at Gomez Check Cashing in Trenton, New Jersey.

jjj.      On or about January 27, 2017, Hollie Ann Nadel checked into a room at Fairfield Inn Chelsea in New York.

kkk.      On or about January 27, 2017, Hollie Ann Nadel communicated by cellular telephone with Defendant GINA RITA RUSSELL.

lll.        On or about January 27, 2017, Defendants ROBERT EVANS and GINA RITA RUSSELL checked into a room at the Fairfield Inn Chelsea in New York.

mmm.        On or about January 27, 2017, at the direction of Hollie Ann Nadel, Daniel Zancan drove from the Washington, D.C. metropolitan area to New York to deliver $500,000 in cash, including cash he received from James Padilla and Individual A, to Hollie Ann Nadel and other co-conspirators.

nnn.        On or about January 27, 2017, Defendant TONY JOHN EVANS communicated by cellular telephone with Daniel Zancan and directed Daniel Zancan to drive to a specific location in New York, New York.  Defendant TONY JOHN EVANS asked Daniel Zancan what type of vehicle he was driving, before directing Daniel Zancan to drive to the Fairfield Inn Chelsea in New York.

ooo.        On or about January 27, 2017, Hollie Ann Nadel exchanged text messages with Defendant ROBERT EVANS stating, "He gave time estimate 30 mins" and "G is saying for dan to go to little Italy instead?" and "He's coming up."  During these exchanges, Defendant ROBERT EVANS texted Hollie Ann Nadel a photo of Daniel Zancan's vehicle.

ppp.        On or about January 27, 2017, Defendant TONY JOHN EVANS and Hollie Ann Nadel directed Daniel Zancan to deliver approximately $500,000 in cash, including cash he received from James Padilla and Individual A, to Hollie Ann Nadel's hotel room in New York, New York for later retrieval by co-conspirators.

qqq.        On or about January 30, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $9,600.00 to Hollie Ann Nadel's account at Bank of America (account number xxxxxxxx3147).  Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service

Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $9,400.00 to Hollie Ann Nadel's account at TD Bank (account number xxxxxx1860).

        rrr.        On or about January 30, 2017, Hollie Ann Nadel traveled by Amtrak train from Washington, D.C. to New York, New York and provided cash to co-conspirators.

        sss.        On or about January 31, 2017, Defendant GINA RITA RUSSELL sent a text message to Defendant TONY JOHN EVANS stating, "Tony Dan is waiting for your call call me when you get this."

        ttt.        On or about February 1, 2017, Hollie Ann Nadel caused Daniel Zancan to deposit into his account at SunTrust Bank (account number xxxxxxxxx8370) a total of $10,000 in money orders that were derived from funds Hollie Ann Nadel caused Daniel Zancan to wire to Individual A on January 24, 2017.

        uuu.        On or about February 1, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $100,000.00 to James Padilla's trial and litigation support business's account at JP Morgan Chase (account number xxxxx1097). On February 2, 2017, Hollie Ann Nadel caused James Padilla to obtain a cashier's check in the amount of $80,000 from Chase Bank, which James Padilla cashed at Gomez Check Cashing in Trenton, New Jersey.

        vvv.        On or about February 2, 2017, Hollie Ann Nadel directed Daniel Zancan to deliver cash, including cash received from James Padilla, to Hollie Ann Nadel and other co-conspirators in New York.

        www.        On or about February 2, 2017, Hollie Ann Nadel sent an instant message to Defendant GINA RITA RUSSELL stating "Hey he got it sooner than he thought – he's an hour away[.]"

xxx.     On or about February 2, 2017, Defendant GINA RITA RUSSELL sent instant messages to Hollie Ann Nadel stating "Text me Dan's full name in the name of his company" and requesting a photo of Daniel Zancan.

yyy.     On or about February 2, 2017, Hollie Ann Nadel texted Defendant GINA RITA RUSSELL Daniel Zancan's name and employer's name and a photo of Daniel Zancan.

zzz.     On or about February 2, 2017, Defendant GINA RITA RUSSELL texted Defendant TONY JOHN EVANS images of Daniel Zancan's face and of a black handbag containing bundles of cash.

aaaa.    In or about February 2017, Defendant GINA RITA RUSSELL demanded that Hollie Ann Nadel demand $1.9 million from Daniel Zancan.

bbbb.    On or about February 4, 2017, Defendant GINA RITA RUSSELL sent instant messages to Hollie Ann Nadel giving her instructions as to what to tell Daniel Zancan to explain the demands for money.

cccc.    On or about February 7, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $24,000.00 to Individual A's account at Capital One Bank (account number xxxxxx4218).  Individual A converted the wired funds to cash, and provided the cash to Daniel Zancan for delivery to co-conspirators in New York.

dddd.    On or about February 8, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 15844 from R&R Mechanical Contractors, Inc.'s check register for its Operating Account at SunTrust Bank (account number xxxxxxxxx3291) and to write a check in the amount of $20,830.00 payable to "Daniel Zancan."  Hollie Ann Nadel caused

Daniel Zancan to write on the face of the check that the purpose of the check was "Expense Reimbursement."  Daniel Zancan deposited the $20,830.00 check belonging to R&R Mechanical Contractors, Inc. into his personal bank account at SunTrust Bank (account number xxxxxxxxx8370).  On or about that same date, Daniel Zancan wrote a check from his account at SunTrust Bank (account number xxxxxxxxx8370) in the amount of $51,000.00 payable to "Daniel Zancan."

eeee.   On or about February 8, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from 2902 Bladensburg Road LLC's office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 124 from 2902 Bladensburg Road LLC's check register for its bank account at BB&T Bank (account number xxxxx4982) and to write a check in the amount of $3,000.00 payable to "Cash."  Daniel Zancan also removed check number 1080 from R&R Mechanical Contractors, Inc.'s check register for its Service Division Operating Account at SunTrust Bank (account number xxxxxxxxx3267) and wrote a check in the amount of $3,000.00 payable to "Cash."  On the face of the check, Daniel Zancan indicated that it was for "Petty Cash."

ffff.   On or about February 8, 2017, Hollie Ann Nadel traveled by Amtrak train from Washington, D.C. to New York, New York and provided cash to co-conspirators.

gggg.   On or about February 9, 2017, at the instruction of Hollie Ann Nadel, Daniel Zancan traveled to New York, New York to deliver approximately $150,000 cash, including cash received from Individual A, to Hollie Ann Nadel and co-conspirators.

hhhh.   On or about February 10, 2017, Defendant ARCHIE KASLOV made two transfers of $12,700 and $33,870 in proceeds of his criminal activity to a pawn dealer in New York for the purchase of watches and jewelry.

iiii.   On or about February 13, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division

Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $31,864.00 to Hollie Ann Nadel's personal checking account at Bank of America (account number xxxxxxxx3147).

        jjjj.      On or about February 13, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 15931 from R&R Mechanical Contractors, Inc.'s check register for its Operating Account at SunTrust Bank (account number xxxxxxxxx3291) and to write a check in the amount of $7,500.00 payable to "Daniel Zancan." Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that the purpose of the check was "Expenses." Daniel Zancan deposited the $7,500.00 check into his personal bank account at SunTrust Bank (account number xxxxxxxxx8370).

        kkkk.      On or about February 14, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $124,000.00 to 2902 Bladensburg Road LLC's account at BB&T Bank (account number xxxxx4982). On the following day, February 15, 2017, Hollie Ann Nadel caused Daniel Zancan to remove a check, from 2902 Bladensburg Road LLC's office located at 2902 Bladensburg Road, N.E., Washington, D.C., from the check register for its bank account at BB&T Bank (account number xxxxx4982). Hollie Ann Nadel caused Daniel Zancan to write a check in that same amount of $124,000.00 payable to "Cash." Hollie Ann Nadel also caused Daniel Zancan to remove check number 1081 from R&R Mechanical Contractors, Inc.'s check register for its Service Division Operating Account at SunTrust Bank (account number xxxxxxxxx3267) and to write a check in the amount of $3,000.00 payable to "Cash." Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that the purpose of the check was "Petty Cash." Hollie Ann Nadel also caused Daniel

Zancan to remove check number 1450 from R&R Mechanical Contractors, Inc.'s check register for its Service Division Operating Account at SunTrust Bank (account number xxxxxxxxx3267) and to write a check in the amount of $20,000.00 payable to James Padilla's trial and litigation support business, which James Padilla deposited into his business's account at JP Morgan Chase (account number xxxxx1097).  Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that its purpose was "retainer fee."

      llll.      On or about February 16, 2017, Hollie Ann Nadel directed Daniel Zancan to travel to New York, New York to deliver cash to Hollie Ann Nadel and co-conspirators.

      mmmm.      On or about February 16, 2017, Defendants ARCHIE KASLOV and ROBERT EVANS used the proceeds of their criminal activity to purchase watches.

      nnnn.      On or about February 17, 2017, Hollie Ann Nadel sent a text message to Daniel Zancan that "Tony" is ready to talk.  Defendant TONY JOHN EVANS and Hollie Ann Nadel communicated by three-way cellular telephone call during which Defendant TONY JOHN EVANS informed Daniel Zancan that the "juice" on the 1.9 million was 10 percent per month, which Daniel Zancan understood to mean that Hollie Ann Nadel owed 10% monthly interest on a $1.9 million debt to the individuals who purportedly threatened harm unless the debt was repaid.

      oooo.      On or about February 17, 2017, Hollie Ann Nadel texted Daniel Zancan's personal cell phone number to Defendant GINA RITA RUSSELL, which Defendant GINA RITA RUSSELL texted to Defendant TONY JOHN EVANS.

      pppp.      On or about February 17, 2017, Defendant TONY JOHN EVANS communicated by cellular telephone with Daniel Zancan.

      qqqq.      On or about February 18, 2017, Hollie Ann Nadel conducted searches on the Internet for Daniel Zancan, Daniel Zancan's wife, and Daniel Zancan's home address.

rrrr.    On or about February 20, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 15947 from R&R Mechanical Contractors, Inc.'s check register for its Operating Account at SunTrust Bank (account number xxxxxxxxx3291) and to write a check in the amount of $113,700.00 payable to "Daniel Zancan."  Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that its purpose was "Distribution."  On or about February 21, 2017, Daniel Zancan deposited the $113,700.00 into his bank account at SunTrust Bank (account number xxxxxxxxx8370).

ssss.    On or about February 21, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $200,000.00 to Gaithersburg Coin Exchange, Inc.'s account at Bank of America (account number xxxxxx5338) for the purchase of 157 gold bars.  On or about February 24, 2017, Hollie Ann Nadel caused Daniel Zancan to pick up 157 gold bars from Gaithersburg Coin Exchange, Inc. in Gaithersburg, Maryland, and to deliver those bars to Hollie Ann Nadel and co-conspirators in New York.

tttt.    On or about February 27, 2017, Hollie Ann Nadel directed Daniel Zancan to travel to New York, New York to deliver approximately $190,000 in cash to Hollie Ann Nadel and co-conspirators.

uuuu.    On or about March 2, 2017, Hollie Ann Nadel texted Daniel Zancan that the co-conspirators were demanding $254,000.

vvvv.    On or about March 6, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $218,000.00 to his personal

bank account at SunTrust Bank (account number xxxxxxxxx8370).  Hollie Ann Nadel caused Daniel Zancan to indicate that the purpose of the wire was for "2017 Distribution."

wwww.    On or about March 10, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $16,000.00 to Hollie Ann Nadel's account at TD Bank (account number xxxxx4690).

xxxx.    On or about March 10, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $110,000.00 to 2902 Bladensburg Road LLC's account at BB&T Bank (account number xxxxx4982) in preparation for future transfers out of the account.

yyyy.    On or about March 10, 2017, Defendant TONY JOHN EVANS used the proceeds of his criminal activity to purchase watches.

zzzz.    On or about March 11, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 8650956 in the amount of $4,000.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxx4982) payable to "Cash."

aaaaa.    On or about March 14, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Operating Account at SunTrust Bank (account number xxxxxxxxx3291) in the amount of $110,750.00 to his personal bank account at SunTrust Bank (account number xxxxxxxxx8370).  Hollie Ann Nadel caused Daniel Zancan to falsely claim that the purpose of the wire was for "2017 Owner Distribution."  On or about March 14, 2017, Daniel Zancan wrote a check from his account at SunTrust Bank (account number xxxxxxxxx8370) in the amount of $179,800.00 payable to "Daniel Zancan."

bbbbb.       On or about March 15, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $20,000.00 to James Padilla's account at Bank of America (account number xxxxxxxx8463).

ccccc.       On or about March 15, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 80 from R&R Mechanical Contractors, Inc.'s check register for its Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) and to write a check in the amount of $4,312.00 payable to "Cash."  Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that the purpose of the check was "Petty Cash."

ddddd.       On or about March 15, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 1451 from R&R Mechanical Contractors, Inc.'s check register for its Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) and to write a check in the amount of $32,401.00 payable to "Daniel Zancan."  Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that its purpose was "2013 Tax Distribution."  On or about March 23, 2017, Daniel Zancan deposited the $32,401.00 check into his account at SunTrust Bank (account number xxxxxxxxx8370).

eeeee.       On or about March 16, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 819677 in the amount of $50,000.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxx4982) payable to "Cash."

fffff.       On or about March 16, 2017, Hollie Ann Nadel caused Daniel Zancan to obtain check number 819678 in the amount of $50,000.00 from 2902 Bladensburg Road LLC's bank account at BB&T Bank (account number xxxxx4982) payable to "Cash."

ggggg.      On or about March 16, 2017, Hollie Ann Nadel caused Daniel Zancan to cash cashier's checks totaling $279,000 at Gomez Check Cashing in Trenton, New Jersey. Hollie Ann Nadel directed Daniel Zancan to deliver that cash to her co-conspirators in New York.

hhhhh.      On or about March 17, 2017, Defendant TONY JOHN EVANS transferred $16,000 in proceeds of his criminal activity to a pawn dealer in New York for watches.

iiiii.      On or about March 20, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 1005 from R&R Mechanical Contractors, Inc.'s check register for its Service Division Payroll Account at SunTrust Bank (account number xxxxxxxxx3366) and to write a check in the amount of $6,500.00 payable to "Daniel Zancan" Daniel Zancan deposited the $6,500.00 check into his account at SunTrust Bank (account number xxxxxxxxx8370).

jjjjj.      On or about March 21, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $406,327.80 to Golden Eagle Coins's account at PNC Bank (account number xxxxxx1264) for the purchase of 10 one-kilo gold bars.  On or about March 23, 2017, Daniel Zancan picked up 10 one-kilo gold bars from Golden Eagle Coins in Laurel, Maryland, and delivered those bars to Hollie Ann Nadel and her co-conspirators in New York.

kkkkk.      On or about March 21, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $7,500.00 to Hollie Ann Nadel's account at Bank of America (account number xxxxxxxx3147).

lllll.        On or about March 22, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $503,227.00 to The Bullion Bank's account at Capital One Bank (account number xxxxxx9962) for the purchase of 12 one-kilo and 10 one-ounce gold bars.  Daniel Zancan picked up the gold bars from The Bullion Bank in Chantilly, Virginia, and delivered those bars to Hollie Ann Nadel and co-conspirators in New York.

mmmmm. On or about March 22, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3291) in the amount of $600,780.06 to Bullion Exchanges, LLC's account at TD Bank (account number xxxxxx3594) for the purchase of 26 one-ounce gold bars and 14 one-kilo gold bars.  Daniel Zancan picked up the gold bars from Bullion Exchanges, LLC in New York, New York, and delivered those bars to Hollie Ann Nadel and co-conspirators in New York.

nnnnn.        On or about March 23, 2017, Hollie Ann Nadel caused Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $205,000.00 to Landman & Company's account at Wells Fargo Bank (account number xxxxxx8690) for the purchase and delivery of 161 one-ounce gold bars.  On March 24, 2017, Landman & Company delivered 100 one-ounce gold bars to Daniel Zancan at R&R Mechanical Contractors, Inc., located at 2902 Bladensburg Road, N.E., Washington, D.C.  On March 27, 2017, Landman & Company delivered 61 one-ounce gold bars to Daniel Zancan at R&R Mechanical Contractors, Inc., located at 2902 Bladensburg Road, N.E., Washington, D.C.   Daniel Zancan picked up both shipments and transported the gold to New York, where Daniel Zancan exchanged the gold at a gold dealer for

$80,000 in cash.  Hollie Ann Nadel directed Daniel Zancan to provide $50,000 in cash to Hollie Ann Nadel for delivery to her co-conspirators in New York.

ooooo.      On or about March 24, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $25,000.00 to Hollie Ann Nadel's account at Bank of America (account number xxxxxxxx3147).

ppppp.      On or about March 24, 2017, Hollie Ann Nadel directed Daniel Zancan to initiate a wire transfer from R&R Mechanical Contractors, Inc.'s Service Division Account at SunTrust Bank (account number xxxxxxxxx3267) in the amount of $25,000.00 to Hollie Ann Nadel's account at TD Bank (account number xxxxxx1860).

qqqqq.      On or about March 27, 2017, Hollie Ann Nadel caused Daniel Zancan to remove, from R&R Mechanical Contractors, Inc.'s office located at 2902 Bladensburg Road, N.E., Washington, D.C., check number 16200 from R&R Mechanical Contractors, Inc.'s check register for its Operating Account at SunTrust Bank (account number xxxxxxxxx3291) and to write a check in the amount of $99,575.00 payable to "Daniel Zancan."  Hollie Ann Nadel caused Daniel Zancan to write on the face of the check that its purpose was "Materials."  Daniel Zancan deposited the $99,575.00 check into his bank account at SunTrust Bank (account number xxxxxxxxx8370).

rrrrr.      On or about March 27, 2017, Defendant TONY JOHN EVANS used the proceeds of his criminal activity to purchase watches.

**(Conspiracy to Commit Extortion, Bank Fraud, and Wire Fraud,
in violation of Title 18, United States Code, Section 371)**

## COUNT TWO
### (Interference with Interstate Commerce by Extortion)

36.     The allegations set forth in paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference.

37.     Beginning in or about November 2016, and continuing through in or about April 2017, within the District of Columbia and elsewhere, Defendants GINA RITA RUSSELL, TONY JOHN EVANS, and ROBERT EVANS, and Hollie Ann Nadel did knowingly obstruct, delay, and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951, and attempted to do so, in that, Defendants GINA RITA RUSSELL, TONY JOHN EVANS, and ROBERT EVANS, and Hollie Ann Nadel did unlawfully take and obtain property consisting of money and gold bars and coins from the custody and possession of Daniel Zancan, against his will by means of threatened use of force, violence, and fear of injury, immediate and future, to his person, the persons of his family, and Hollie Ann Nadel.

**(Interference with Interstate Commerce by Extortion,
and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1951(a) and 2)**

## COUNT THREE
### (Bank Fraud)

38.     The allegations set forth in paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference.

39.     Beginning in or about January 2017, and continuing through in or about April 2017, within the District of Columbia and elsewhere, Defendants GINA RITA RUSSELL and CORRY BLUE EVANS knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain monies, funds, credits, assets, securities, and other property owned by, and under the custody and control of SunTrust Bank, which was a financial institution with deposits insured by

the Federal Deposit Insurance Corporation, to wit $3,818,512.86 from bank accounts held in the name of R&R Mechanical Contractors, Inc., by means of materially false and fraudulent pretenses, representations, and promises.

**(Bank Fraud, and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1344(2) and 2)**

## COUNT FOUR
**(Wire Fraud)**

40.     The allegations set forth in paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference.

41.     Beginning in or about January 2017, and continuing through in or about April 2017, within the District of Columbia and elsewhere, Defendants GINA RITA RUSSELL and CORRY BLUE EVANS knowingly devised a scheme to defraud R&R Mechanical Contractors, Inc., and to obtain money and property of R&R Mechanical Contractors, Inc. by means of materially false and fraudulent pretenses, representations, and promises.

42.     On or about the date set forth below, in the District of Columbia and elsewhere, Defendants GINA RITA RUSSELL and CORRY BLUE EVANS, for the purpose of executing the aforementioned scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, and sounds:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| Four | January 20, 2017 | Email from Daniel Zancan to District Manager of PLS Financial Services in New York, attaching fraudulent Stock Purchase Agreement between R&R Mechanical Contractors, Inc. and Hollie Ann Nadel |

**(Wire Fraud,
in violation of Title 18, United States Code, Section 1343)**

**COUNT FIVE**
**(Conspiracy to Commit Money Laundering)**

43.     The allegations set forth in paragraphs 1 through 35, 39, and 41 of this Indictment are realleged and incorporated by reference.

44.     Beginning in or about January 2017, and continuing through in or about June 2017, within the District of Columbia and elsewhere, Defendants GINA RITA RUSSELL, TONY JOHN EVANS, ROBERT EVANS, CORRY BLUE EVANS, and ARCHIE KASLOV, and other co-conspirators, known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i), and Title 18, United States Code, Section 1957:

        a.   by conducting and attempting to conduct financial transactions, that is, the withdrawal and transfer of funds and monetary instruments, in and affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, that is Conspiracy to Commit Extortion, Bank Fraud, and Wire Fraud, in violation of Title 18, United States Code, Section 371, Interference with Interstate Commerce by Extortion, in violation of Title 18, United States Code, Sections 1951(a) and 2, Bank Fraud, in violation of Title 18, United States Code Sections 1344(2) and 2, and Wire Fraud, in violation of Title 18, United States Code Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and to disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

        b.   by knowingly engaging in and attempting to engage in monetary transactions, that is, the withdrawal and transfer of funds and monetary instruments, in and affecting interstate

commerce, by, through, and to financial institutions, in criminally derived property that was of a value greater than $10,000, and that was derived from specified unlawful activity, that is, Conspiracy to Commit Extortion, Bank Fraud, and Wire Fraud, in violation of Title 18, United States Code, Section 371, Interference with Interstate Commerce by Extortion, in violation of Title 18, United States Code, Sections 1951(a) and 2, Bank Fraud, in violation of Title 18, United States Code Sections 1344(2) and 2, and Wire Fraud, in violation of Title 18, United States Code Section 1343, all in violation of Title 18, United States Code, Section 1957.

## The Goal of the Conspiracy

45.    The goal of the conspiracy was for Defendants GINA RITA RUSSELL, TONY JOHN EVANS, ROBERT EVANS, CORRY BLUE EVANS, and ARCHIE KASLOV and other co-conspirators,

a.   to illegally enrich GINA RITA RUSSELL, TONY JOHN EVANS, ROBERT EVANS, CORRY BLUE EVANS, and ARCHIE KASLOV and other co-conspirators;

b.   to engage in monetary transactions affecting interstate or foreign commerce, in criminally derived proceeds, knowing that the monetary transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the criminally derived proceeds; and

c.   to engage in monetary transactions by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.

## Manner and Means of the Conspiracy

46.    Among the additional manners and means by which GINA RITA RUSSELL, TONY JOHN EVANS, ROBERT EVANS, CORRY BLUE EVANS, and ARCHIE KASLOV, and Hollie Ann Nadel, Daniel Zancan, James Padilla, and Individual A would and did carry out the objectives of the conspiracy were by engaging in the following monetary transactions:

a.   withdrawing proceeds of criminally derived property from accounts held in the names of Hollie Ann Nadel, Daniel Zancan, James Padilla, and Individual A;

b.   converting the proceeds of criminally derived property into cash or for the purchase of cashier's checks for subsequent delivery to Hollie Ann Nadel and other co-conspirators;

c.   depositing proceeds of criminally derived property into accounts held in the names of Defendants GINA RITA RUSSELL, CORRY BLUE EVANS, TONY JOHN EVANS, and ROBERT EVANS, and Hollie Ann Nadel;

d.   transferring the proceeds of criminally derived property to vehicle dealers for the purchase of automobiles by Defendants CORRY BLUE EVANS, TONY JOHN EVANS, and ARCHIE KASLOV; and

e.   transferring the proceeds of criminally derived property to pawn dealers for the purchase of watches and jewelry by Defendants ROBERT EVANS, TONY JOHN EVANS, and ARCHIE KASLOV.

47.   These monetary transactions were designed to conceal and disguise the nature, the location, the source, the ownership, or the control of the criminally derived proceeds.

**(Conspiracy to Commit Money Laundering,
in violation of Title 18, United States Code, Section 1956(h))**

## COUNTS SIX THROUGH TEN
**(Engaging in Monetary Transactions in Property
Derived from Specified Unlawful Activity)**

48.   The allegations set forth in paragraphs 1 through 35, 39, 41, and 44-46 of this Indictment are realleged and incorporated by reference.

49.   On or about the dates and in the amounts specified below, Defendants ARCHIE KASLOV, ROBERT EVANS, TONY JOHN EVANS, and CORRY EVANS did knowingly

engage and attempt to engage in the following monetary transactions, by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having derived from a specified unlawful activity, that is a Conspiracy to Commit Extortion, Bank Fraud, and Wire Fraud.   Additionally, as to Defendants ROBERT EVANS and TONY JOHN EVANS, such property also having derived from a specified unlawful activity, that is Interference with Interstate Commerce by Extortion.   Additionally, as to Defendant CORRY BLUE EVANS, such property also having derived from a specified unlawful activity, that is Bank Fraud and Wire Fraud.

| Count | On or About Date | Amount | Transactions |
|-------|------------------|--------|--------------|
| Six | January 13, 2017 | $11,400.00 | Cash transfer from Defendant ARCHIE KASLOV to Modell's Collateral Loans for the purchase of watches and jewelry |
| Seven | January 18, 2017 | $20,900.00 | Cash transfer from Defendant ROBERT EVANS to Modell's Collateral Loans for the purchase of a watch |
| Eight | February 10, 2017 | $46,570.00 | Cash transfer in the amounts of $12,700 and $33,870 from Defendant ARCHIE KASLOV to Modell's Collateral Loans for the purchase of watches and jewelry |
| Nine | April 17, 2017 | $195,000.00 of which $126,000.00 was criminally derived proceeds | Wire from Defendant TONY JOHN EVANS's account at Santander Bank (account number xxxxxx4941) to Rolls Royce Motor Cars of Orange County for the purchase of a 2009 Rolls Royce Phantom |
| Ten | May 22, 2017 | $320,000.00 | Cash transfer from Defendants ARCHIE KASLOV and CORRY EVANS to Westwood Motors LLC in Carrollton, Texas for the purchase of a 2015 Rolls Royce Phantom |

**(Engaging in Monetary Transactions in Property Derived from
Specified Unlawful Activity, and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1957 and 2)**

**COUNT ELEVEN**
**(Tampering with a Witness by Corrupt Persuasion or Misleading Conduct)**

50.     The allegations set forth in paragraphs 1 through 49 of this Indictment are realleged and incorporated by reference.

51.     On or about April 4, 2017, Defendants CANDY EVANS and GINA RITA RUSSELL did knowingly corruptly persuade, and engage in misleading conduct toward Hollie Ann Nadel, with the intent to prevent Hollie Ann Nadel from providing information to the Federal Bureau of Investigation ("FBI") by directing, causing, and inducing Defendant GINA RITA RUSSELL to marry Hollie Ann Nadel for the purpose of creating a purported spousal or marital privilege which would serve to prevent Hollie Ann Nadel from testifying against Defendant GINA RITA RUSSELL, and that Defendants CANDY EVANS and GINA RITA RUSSELL did so with the intent to hinder, delay, and prevent the communication to the FBI agents of information relating to the commission of the federal offenses of conspiracy to commit extortion, bank fraud, and wire fraud, interference with interstate commerce by extortion, bank fraud, wire fraud, conspiracy to commit money laundering, and engaging in monetary transactions in property derived from specified unlawful activity.

**(Tampering with a Witness by Corrupt Persuasion or Misleading Conduct,**
**in violation of Title 18, United States Code Section 1512(b)(3))**

**COUNT TWELVE**
**(Tampering with a Witness by Corrupt Persuasion or Misleading Conduct)**

52.     The allegations set forth in paragraphs 1 through 49 of this Indictment are realleged and incorporated by reference.

53.     On or about April 8, 2017, Defendants CANDY EVANS and GINA RITA RUSSELL did knowingly corruptly persuade, and engage in misleading conduct by directing, causing, and inducing Hollie Ann Nadel and Defendant GINA RITA RUSSELL to sign false

confessions which fully implicated Defendant GINA RITA RUSSELL and Hollie Ann Nadel in the extortion of Daniel Zancan and related fraud offenses and falsely exonerated Defendants CORRY BLUE EVANS, TONY JOHN EVANS, ROBERT EVANS, CANDY EVANS, and ARCHIE KASLOV in those offenses, and that Defendants CANDY EVANS and GINA RITA RUSSELL did so with the intent to hinder, delay, and prevent the communication to the FBI agents of information relating to the commission of the federal offenses of conspiracy to commit extortion, bank fraud, and wire fraud, interference with interstate commerce by extortion, bank fraud, wire fraud, conspiracy to commit money laundering, and engaging in monetary transactions in property derived from specified unlawful activity.

**(Tampering with a Witness by Corrupt Persuasion or Misleading Conduct, in violation of Title 18, United States Code Section 1512(b)(3))**

**COUNT THIRTEEN**
**(Tampering with a Witness by Corrupt Persuasion or Misleading Conduct)**

54.     The allegations set forth in paragraphs 1 through 49 of this Indictment are realleged and incorporated by reference.

55.     On or about April 26, 2017 through on or about April 27, 2017, Defendants CANDY EVANS and GINA RITA RUSSELL did knowingly corruptly persuade, and engage in misleading conduct by directing, causing, and inducing Hollie Ann Nadel to provide false information to the Federal Bureau of Investigation ("FBI") that the co-conspirators who had threatened her did not exist and that it was Daniel Zancan who had been threatening her all along and that Defendants CANDY EVANS and GINA RITA RUSSELL did so with the intent to hinder, delay, and prevent the communication to the FBI agents of information relating to the commission of the federal offenses of conspiracy to commit extortion, bank fraud, and wire fraud, interference with interstate commerce by extortion, bank fraud, wire fraud, conspiracy to commit money

laundering, and engaging in monetary transactions in property derived from specified unlawful activity.

**(Tampering with a Witness by Corrupt Persuasion or Misleading Conduct,
and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1512(b)(3) and 2)**

## FORFEITURE ALLEGATION

1.     Upon conviction of any of the offenses alleged in Counts One, Two, Four, and/or Five the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

2.     Upon conviction of any of the offenses alleged in Counts One and/or Three the defendants shall forfeit to the United States any property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as the result of these offenses, pursuant to 18 U.S.C. § 982(a)(2)(A).   The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as the result of these offenses.

3.     Upon conviction of any of the offenses alleged in Counts Five, Six, Seven, Eight, Nine, and/or Ten the defendants shall forfeit to the United States any property, real or personal, involved in these offenses, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).  The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, involved in these offenses, and any property traceable to such property.

4.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property that cannot be divided without
            difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Sections 982(a)(1) and (a)(2)(A), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:


FOREPERSON

Attorney of the United States in
and for the District of Columbia