UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.  CRIMINAL
 18-103-EGS

GINA RITA RUSSELL

MOTION TO REVIEW AND MODIFY ORDER OF DETENTION

I.  MOTION

Pursuant to 18 U.S.C. § 3142(f)(2)(B), defendant GINA RITA RUSSELL, by counsel Adam Silverstein, Esq., moves this Court to review and reconsider the Order of Detention entered in the United States District Court, Central District of California by Magistrate Judge John E. McDermott on April 27, 2018.

II.  PROCEDURAL BACKGROUND

On April 27, 2018 Ms. Russell was arrested at her home in California.  She was brought before Judge McDermott and the Government moved for her detention, citing allegations that Ms. Russell was a flight risk, a risk to individuals or the community at large, and therefore no combination of conditions could secure her appearance.  The Court concluded that this was, in fact the case, citing foreign travel, her relatively brief residence in Los Angeles, no confirmed bail resources, illegal substance abuse history, the she "may have attempted to avoid or delay apprehension," as well as the gravity of the charges and possible mental health concerns.

The allegations of the indictment are essentially that the six defendants and one unindicted, participating female enacted a "honey pot" scenario where the unindicted, participating female lured three (and possibly more) gentlemen to embezzle large sums from business account over which they had control. From the volume, number and nature of the transactions -where the three gentlemen extracted money from the business accounts over which they had control, then traded checks, cash and currency among themselves to obscure the money trail, and then helped deliver cash and gold bullion to New York - that the three gentlemen were probably less likely victims and much more likely sharing in the enterprise. It is unknown if these gentlemen have been or will be charged.

Ms. Russell is the common-law wife of defendant Robert Evans, and Daughter-in-law of Candy Evans and Archie Kaslow. She has children in common with Mr. Evans. She has been subject to abuse and these defendants have consistently exercised control over her, leveraging her children over her in order to do so.

Her involvement with HOLLY ANN NADEL, the unindicted, participating female appears to be a romantic one, and her involvement in the purported conspiracy appears to be no more, and often significantly less intense than that of the five others. Notably, all five co-defendants have been released.

III     ARGUMENT

The Government argues there was a crime of violence involved, this being Count Four: Interference with Interstate Commerce by Extortion. We posit this is nothing less than a canard. The Government avers that Daniel Zancan and his family was threatened with physical harm, but the factual recitation of the indictment makes clear that any threat communicated to him was likely only the imaginary threats conveyed by Ms. Nadel, the unindicted, participating female. The

theme of the indictment was that she played a "damsel in distress," and that the conspirators play-acted as a "mob" enterprise to which she owed money.  According to the indictment, none of this was true, and the "threats" were fabricated in order to secure the cooperation of Daniel Zancan. The Government cannot then come forth and legitimately claim that threats of violence against Ms. Nadel were made and seek to hold Ms. Russell in custody as a result.  The calculated efforts by Mr. Zancan to filch funds from his company, the involvement of other purported romantic interests of Ms. Nadel, and the extravagant volume of this theft belie any claim by the Government that he was not a willing participant.  Furthermore, the unsubstantiated claim he or his family were threatened is inconsistent with the Government's "honey-pot'" theme.  The story line of the Government's pleading should remain consistent. Finally, TONY JOHN EVANS and ROBERT EVANS, similarly charged, - with one actually playing the part of the fake mobster – were released from custody pending trial.

All the other defendants - and other citizens ion general – have travelled internationally. Ms. Russell has not travelled with any unusual extent or frequency.  Indeed, she relocated to Los Angeles to be with her mother and away from the other indicted defendants, particularly Robert and Candy Evans.  Pre-trial Services recommends her release under general USDC supervision, with courtesy supervision in Los Angeles.   And the report cites no mental health concerns.  It does, however, citer her hypertension as a health concern.  She also has some dental health issues that make her continued incarceration particularly uncomfortable.

Her sole reported contact with the justice system is a conviction for driving without a license, which in California is a "wobbler" offense, meaning it may be charged either as a misdemeanor or as a non-criminal infraction.  The allegation that Ms. Russell avoided apprehension is unpersuasive, in light of the fact that her family attorney spoke with eth FBI in

Los Angeles and sought to arrange her surrender, and when this did not occur soon enough for the Government, she was arrested at her home. This is hardly the portrait of a fugitive.

We cannot speak to the allegations that Ms. Russell abused drugs, but we can say that pain or anxiety medication, event if over prescribed or used without prescription is no colorable reason to detain a person pretrial. Ms. Russell has no diagnosed mental illness, nor – as this Court has had the opportunity to observe - does she display such tendencies, and we put the Government to its proofs on these allegations. We can question whether her alleged substance abuse differs in any material way with that the Government alleges as to the remaining defendants.

We do not dispute the seriousness of the charges, but we do question the applicability of the extortion charge to the facts of the indictment, and we do point out that Ms. Russell has no criminal record and that the abuse and coercion she suffered and the hands of her co-defendants may play a prominent role in any finding of fact.

IV.     RELEASE PLAN

Pretrial Services has recommended the supervised release of Ms. Russell. She proposes to stay in Los Angeles in the home and under the supervision of a close friend, Susan White. Ms. White is a bail bondsperson, licensed and bonded in the State of California. She is willing to act as surety. MS. White's job is to return fugitives to justice. We are hard-pressed to come up with a more capable security. The Licenses, cards and Insurance are annexed hereto.

V.      DUE PROCESS IMPLICATIONS OF CONTINUED PRETRIAL DETENTION

Basic fairness and the Supreme Court recognize there are constitutional limits on pretrial detention. Excessive bail may be prohibited, as in Stack v. Boyle, 342 U.S. 1, 4-5 (1951). Courts have similarly barred punitive conditions of pretrial Confinement. Bell v. Wolfish, 441 U.S. 520, 535-37 (1979). They have also prohibited pretrial detention as punishment, Lopez-

Valenzuela v. Arpaio, 770 F.3d 772, 777 (9th Cir. 2014), citing United States v. Salerno, 481 U.S. 739, 746-48 (1987), Schall v. Martin, 467 U.S. 253, 269-74 (1984).  Further, Salerno held that restrictions on pretrial release of adult arrestees must be carefully limited to serve a compelling governmental interest.  Salerno, 481 U.S. at 748-51.

The Bail Reform Act repeats the presumption in favor of release and preference for minimal conditions for release in each section of 3142.  The government bears the burden of persuading the court that no condition or combination of conditions will reasonably assure defendant's presence at trial.  "Detention prior to trial or without trial is the carefully limited exception," while an individual charged with serious felonies may be detained before trial when, after an adversary hearing, the individual is found, "to pose a threat to the safety of individuals or to the community which no condition of release can dispel."  United States v. Salerno, 481 U.S. 739, 755.  There is no realistic threat to any person by Ms. Russell.  Any assertion to the contrary is belied by the fact that all remaining defendants, with equal or greater alleged culpability, remain at liberty.  When assessing the validity of a pretrial detention, the central issue is the detainee's right, in accordance with due process, to be free from punishment before the adjudication of guilt. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). We submit that there may good reason for pretrial detention, but this defendant has provided no such grounds, and her continued detention is arguably more punitive than necessary to secure her appearance.  "Valid pretrial detention assumes a punitive character when it is prolonged significantly." United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986).

Also, the length of pretrial detention is a factor that the Court should consider,  Here, the matter has been listed on the complex track, over defense objection.  Therefore, any pretrial detention will impose an increasingly punitive measure on Ms. Russell as the case progresses over

time. In considering the due process implications of a pretrial detention, Courts have typically focused on three factors: (i) the length of confinement and any non-speculative expected confinement; (ii) the government's responsibility for delays in the proceedings; and (iii) the strength of evidence supporting detention. See United States v. Millan, 4 F.3d at 1043. In addition, some courts have added, as an additional factor, a comparison between the length of the likely sentence the defendant faces and the length of pretrial detention. United States v. Cos, 198 Fed. Appx. 727, 2006 U.S. App. LEXIS 25136, at **12-13; United States v. Shareef, 907 F. Supp. 1481, 1484 (D. Kan. 1995). The defense urges this Court to consider the difference between the length of the likely sentence the defendant faces and the length of pretrial detention. As a first-time offender, and given the glaring inconsistencies of the Government's position with respect to the unindicted participants, Ms. Russell may have very favorable application of guidelines and downward departures. United States v. Cos, 198 Fed. Appx. 727, 2006 U.S. App. LEXIS 25136, at **12-13, United States v. Shareef, 907 F. Supp. 1481, 1484 (D. Kan. 1995)

V.   CONCLUSION

Ms. Russell presents neither a flight risk, nor a threat to herself or any person. She is accused of being essentially the executive secretary in a complex scheme to defraud. The elaborate nature of the narrative has presented certain dead ends for the Government, however. It is akin to adapting a screenplay, where inconsistencies in plot lines develop when one is not careful. The "victims" in the scheme are likely participants, the only true innocents being the companies whose accounts they raided. The threats alleged to have occurred are either fictional, or nonexistent. The disparate treatment she has received is unfair and unwarranted. And Ms. Russell has presented a viable alternative to her continued detention pending trial, which under the law, should be credited and should secure her release.

Dated: June 15, 2018
       Brooklyn, NY

                                                Respectfully submitted,

                                                *Adam Silverstein*

                                                Adam Silverstein, Esq. AS-8641