UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 18-00103-EGS-1 |
| GINA R. RUSSELL, : | |
| : | |
| DEFENDANT. : | |

**DEFENDANT'S MOTION FOR MODIFICATION OF
OF PRETRIAL ORDER REGARDING CONDITIONS OF RELEASE**

Defendant Gina Russell, by and through undersigned counsel, respectfully moves this Court, pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 et seq., to amend the current order regarding conditions of release. Specifically, Defendant Russell requests that the Court vacate the current order holding her without bond pending trial and release her into the Pre-Trial Services Agency's (PSA) High-Intensity Supervision Program (HISP). Counsel respectfully requests a hearing on the motion.

In support of the Motion counsel states the following:

**BACKGROUND**

1. On April 25, 2018, an Indictment was unsealed against Gina Russell along with five co-defendants alleging Conspiracy to Commit Extortion, Bank Fraud, and Wire Fraud; Interference with Interstate Commerce by Extortion; Bank Fraud; Wire Fraud; Conspiracy to Commit Money Laundering; and Tampering with a Witness by Corrupt Persuasion or Misleading Conduct.

*Commented [G1]: Inserted: -*

2. On April 27, 2018, Ms. Russell was arrested, and an Order of Detention was entered in the United States District Court, Central District of California by Magistrate Judge John E. McDermott, holding her without bond.

3. The government alleges that Ms. Russell along with others participated in a scheme to defraud Daniel Zancan of more than four million dollars. Notably, the government represents in its Memorandum in Opposition to Defendant's Motion to Review and Modify Order of Detention, that Ms. Russell is 'uneducated and functionally illiterate' (Govt. Opp. at 23).

4. Ms. Russell has one minor contact with the criminal justice system, and no prior felony arrests or convictions.

5. Counsel's understanding of the PSA report is that it recommends D.C. pretrial supervision 'with courtesy supervision in California.'

6. Counsel has confirmed with Defendant's mother that upon her release, Ms. Russell will continue to reside with her at her home.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant submits that the order of detention should be vacated and that this court should set conditions of release in this case. The Bail Reform Act ("the Act"), 18 U.S.C. §§ 3142, et.seq., creates four bail options: release on personal recognizance, release on conditions, temporary detention and pretrial detention.

The Act mandates pretrial release on personal recognizance or unsecured bond ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(b)) unless the court determines that release will not reasonably assure the person's appearance or will endanger the safety of any person or the community. When personal recognizance or an unsecured bond is determined to be

inadequate to guarantee appearance or safety, the Act still mandates release ("<u>shall</u> order the pretrial release. . . .", 18 U.S.C. § 3142(c)) subject to specified conditions. The conditions must be the least restrictive conditions necessary to reasonably assure the defendant's appearance and the community's safety. <u>United States v. Fortna</u>, 769 F.2d 243 (5th Cir. 1985), <u>cert. denied</u>, 479 U.S. 950 (1986).

      Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors such as the likelihood of flight and community safety in making release determinations. In passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code Section 3142(j). To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "<u>there is a small but identifiable group of particularly dangerous [persons]</u> as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this <u>limited group</u> ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, <u>reprinted in</u> U.S. Code Cong. & Ad. News 3189 (emphasis supplied). Notwithstanding the charges at issue, Defendant should not be considered to be within that limited group. It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention that Congress contemplated pretrial detention of only a small percentage of the individuals awaiting trial.

      The legislative history of the Act also stresses that "[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at

liberty prior to trial. It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal defendants." Id. at 7, 12, reprinted in, 1984 U.S. Code Cong. & Ad. News 3189. Gina Russell is among that majority for whom a combination of conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and her appearance for trial. United States v. Orta, 760 F.2d 887 (8th Cir. 1985). See also 18 U.S.C. §3142(c)(1)(B) (judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such judicial officer shall determine will reasonably assure the appearance of the person as required and the safety of any other person and the community") (emphasis supplied). Courts have recognized that, consistent with the intent expressed in the 1984 Act's legislative history, the statutory scheme of Section 3142 continues to favor release over pretrial detention. See United States v. Orta, 760 F.2d 887, 890-892 (8th Cir. 1985); United States v. Miller, 625 F. Supp. 513, 516-17 (D.Kan. 1985).

In the instant case, Ms. Russell's continued detention without bond is not the least restrictive alternative available that will assure the community's safety and her return for future court dates. See U.S. v. Xulam, 84 F.3d 441 (D.C. Cir. 1996). At a detention hearing, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Title 18 U.S.C. Section 3142(e) provides for pretrial detention *only* if the government can establish that no condition of release will reasonably assure the accused's appearance as required and the safety of any other person or the community. See United States v. Salerno, 481 U.S. 739, 741 (1987).

# ARGUMENT

There are several factors in the instant case which demonstrate that there are conditions of release which would both guarantee the safety of the community and the Defendant's return to Court.

### A. Nature and Circumstances of the Offense.

Despite the seriousness of the government's allegations, the defendant does not pose a danger to the community. The Defendant has no history of violent or threatening conduct. Ms. Russell has one conviction for Driving without a License and has no felony arrests or convictions. The government alleges one crime of violence, in this case, Interference with Interstate Commerce by Extortion, in violation of 18 U.S.C. § 1951(a). The threats alleged by the government, involve complicated interpersonal relationships and conclusions which rely heavily on the interpretation of text messages.

The government's concern that the Defendant will attempt to obstruct justice can be addressed by the imposition of a Stay Away/No Contact order. A No Contact order would provide additional incentive for the Defendant to follow the Court's conditions of release and allow the government to bring additional criminal charges for alleged violations of the Order. The Defendant has no objection to a Stay Away/No contact order which would prohibit direct and 3rd party communication, electronic or otherwise during the pendency of this trial, between Ms. Russell and her co-defendants. Finally, allowing Ms. Russell to return to her mother's home in California, restricts any in-person contact with the co-defendants and prevents any outside influence or interference.

Notwithstanding the government's claim that at the time of her arrest Ms. Russell was unemployed, to the contrary, Ms. Russell was lawfully self-employed. While the HISP may not

> Commented [G4]: Inserted: ,

allow Ms. Russell to work without verified employment, it provides the Court with an alternative to detention and is a less restrictive condition of release.  PSA will place the Defendant into the HISP, and through the Interstate Compact agreement, California would provide courtesy supervision.  Through the HISP, the Court can monitor the Defendant's whereabouts through electronic monitoring and will be notified of any violations of her conditions of release.

The government further urges the court for pretrial detention based on Ms. Russell's exposure to incarceration. The government concludes that exposure to thirty years in prison is a sufficient basis for pre-trial detention and relies on <u>United States v. Anderson</u>, 382 F. Supp. 2d 13, 15 (D.D.C. 2005) (citing "maximum penalty of 23 years" in support of detention), for this proposition.  However, the instant case is distinguishable, and the government's reliance on the case above is misguided.  In that case, half a billion dollars' worth of assets were at issue. The defendant was accused of defrauding the Federal Government (IRS), had used several aliases, traveled internationally, and owned several businesses. None of those factors are present here. Upon information and belief, the Defendant does not have any assets and was not arrested with as much as a passport in her possession.

The government further speculates about the sentence in the event of a conviction and notes that a guideline-recommended sentence where the top end actually exceeds the statutory maximum heavily weighs in favor of detention.  The government cites no authority for this proposition, and their argument is without merit. Pretrial detention is not warranted where less restrictive conditions of release are available.  In this case, the government cannot meet its burden of establishing that no combination of conditions of release will reasonably assure the safety of the community and the Defendant's return to court.

> **Commented [G5]:** Deleted:,
>
> **Commented [G6]:** Deleted:,

### B. Weight of the Evidence.

The government claims that the weight of their evidence is enormous and favors detention. However, while the weight of the evidence is one factor to be considered by the Court, it is not the determinative factor in deciding pretrial detention. In the instant case, the government alleges that text messages sent to Mr. Daniel Zarcan were tantamount to mental torment. The government's claim is exaggerated. The government's request for detention based on the weight of the evidence also relies on a video which purportedly shows Ms. Russell's and Mr. Evans' child in possession of cash at the 'Fairfield Inn hotel'(Govt. Opp. at 20). This evidence undermines the elaborate million-dollar scheme alleged by the government.

### C. The History and Characteristics of the Defendant.

Ms. Russell is 30 years old, and the mother of minor children with co-defendant Robert Evans.  Ms. Russell is not a risk of flight, and there is no support for the contention that she would not return to court when ordered to do so. While it is true that Ms. Russell lived in New York at the time of her initial contact with the FBI, she returned home to live with her mother for reasons unrelated to this case. There is nothing suspicious about Ms. Russell's move to California and the government's claims relating to her move are speculative and based on conjecture.

After relocating to live with her mother in California, Ms. Russell retained counsel who reached out to the government in connection with this case.  Retaining counsel further supports that the Defendant did not intend to evade the authorities and is not a risk of flight. Furthermore, the Defendant's request for counsel in California to contact the D.C. United States Attorney's Office further undermines the government's argument that the defendant moved 'in hopes that her situation would simply go away' (Govt. Opp. at 22).

> **Commented [G7]:** Deleted:,

The government alleges that the attorney representing Ms. Russell relayed information to the Defendant about the existence of an arrest warrant and that she should self-surrender. However, what is missing from the government's assessment, is any reference to the logistics of how such a self-surrender would happen. Presumably, the FBI would need to be involved in the coordination of a D.C. warrant being executed in California. The attorney who represented Ms. Russell did not provide her or her family with any basic information relating to the existence of the arrest warrant. Furthermore, the government did not provide the attorney with a specific timeframe within which Ms. Russell was required to surrender.  Ms. Russell was not told where she should self-surrender, to whom, or the details about when a self-surrender should occur. There were only 48 hours between the government providing notice to Ms. Russell's attorney about the existence of an arrest warrant and her arrest.  Notably, on April 27, 2018, when the FBI agents 'found and arrested' Ms. Russell, she was not hiding and was arrested at her place of residence.

### D. The Nature and Seriousness of the Danger to Any Person or the Community Posed by the Defendant's Release

The defendant's release poses no physical danger to the community.  Additionally, there is no evidence to support the government's contention that the defendant would engage in criminal activity to the detriment of the community. Ms. Russell asserts that she will abide by all conditions of release and obey all court orders.

The government's claim that the Defendant poses an economic danger to the community is based solely on the allegations outlined in the indictment. While the allegations, in this case, are serious, none of the Defendant's alleged conduct demonstrates that she poses a serious risk to the safety of the community.  The Defendant enjoys the presumption of innocence, and the

government cannot point to any other conduct to support their claim of economic danger to the community.  Ms. Russell's release poses no economic danger to the community.

> E. **The Release Plan Will Assure the Safety of the Community and Defendant's Return to Court.**

The defense has provided specific alternatives and less restrictive conditions of release in response to the to the government's request for detention. In the HISP the Court can 1) electronically monitor the whereabouts of the Defendant; 2) ensure compliance with the court-imposed curfew, and 3) prevent contact with co-defendants through the imposition of a Stay Away/No Contact order.  Participation in the HISP provides an incentive for Ms. Russell to comply with her conditions of release and ameliorates the government's concern relating to potential allegations of obstruction of justice.

**WHEREFORE** for the foregoing reasons, and any others this Court deems just and proper, Gina Russell through counsel, respectfully requests that this Court vacate the order of detention, release her from custody, and place her in the Pre-Trial Services Agency's HISP.

Respectfully submitted,

/s/ Brandi Harden

_____
Brandi Harden, Esq.
Bar No. 470-706
Harden & Pinckney, PLLC
400 7th Street NW, Suite 604
Washington, DC 20004
202.390.0374
hardenpinckney@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2018, I caused a copy of the foregoing Motion for Modification of Pre-Trial Order of Detention to be filed with the Clerk using the CM/ECF System which will send notification of this filing to all parties.

`                                                       /s/ Brandi Harden
                                               _____