**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                                                                                 |                                  |
| ----------------------------------------------------------------------------------------------- | -------------------------------- |
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT EVANS,<br>CORRY BLUE EVANS,<br>CANDY EVANS, and<br>ARCHIE KASLOV,<br><br>　　　　　Defendants. | Criminal No. 18-00103 (EGS)      |

**MEMORANDUM OPINION**

 A federal grand jury indicted Corry Blue Evans and various members of his family on multiple offenses including extortion, money laundering, and bank fraud. Pending before the Court is the government's motion for an order to compel Corry Blue Evans and his co-defendants, including Candy Evans, to provide samples of their DNA. The government seeks to take buccal swabs to compare defendants' DNA to DNA discovered on two weapons: a revolver recovered during the execution of a search warrant at two of his co-defendants' residences; and a shotgun recovered from another co-defendant's residence by consent. Because the government lacks individualized suspicion that this search will lead to evidence of a crime committed by Corry Blue Evans or Candy Evans, the search is unreasonable under the Fourth Amendment. Therefore the government's motion for an order requiring them to submit to a buccal swab is **DENIED**.

## I. Background

Corry Blue Evans, along with other members of his family, were charged in a thirteen-count indictment with multiple offenses including extortion, wire fraud, and bank fraud. *See* Indictment, ECF No. 1. Corry Blue Evans and Robert Evans' charges include conspiracy to commit extortion, bank fraud, wire fraud, and money laundering; and interference with interstate commerce by extortion. *See generally id.* Candy Evans is charged with several counts related to witness tampering. *Id.* ¶¶ 50–55.

The government alleges that Corry Blue Evans and his co-defendants conspired to commit extortion, bank fraud, and wire fraud for the purpose of enriching themselves. *Id.* ¶ 31–33. The indictment also alleges that the defendants enlisted Hollie Nadel, a co-defendant, into a scheme in which she would tell certain individuals that she owed large sums of money to nefarious actors, and that these actors would injure, kidnap, and unlawfully confine her unless the debt was paid. *Id.* ¶ 34–35. One such individual, Daniel Zancan, obtained money from two companies under false pretenses to make payments to these actors, who were in fact the defendants and their co-conspirators. *Id.* The co-conspirators then made false statements and provided false documents to financial institutions to conceal the true nature of the payments from Mr. Zancan. *Id.*

Six days after the grand jury returned a sealed indictment against Ms. Nadel, the FBI executed several search warrants in Manhattan, where the defendants reside. Gov't's Mot., ECF No. 143 at 3.[1] The agents searched several locations including the residences of many of the defendants. *Id.* During the execution of a search warrant at Archie Kaslov and Candy Evans' residence, agents recovered a firearm from beneath a mattress, as well as what the agents believe to be monetary proceeds from criminal activity. *Id.* Separately, Tony John Evans, another co-defendant, advised law enforcement that he kept a shotgun in his apartment, which he located and surrendered to law enforcement. *Id.* Tony John Evans purchased both firearms. *See* Ex. A to Gov't's Mem. in Aid of Sent., ECF No. 105-1 (purchase receipts).

The government submitted both recovered firearms for DNA testing. Gov't's Mot., ECF No. 143 at 4. With respect to the firearm recovered under the mattress at Candy Evans' residence, the FBI lab recovered male DNA that the government states is suitable for comparison purposes. *Id.* With respect to the shotgun recovered from Tony John Evans' residence, the FBI lab recovered a mixture containing male and female DNA that the government also states is suitable for comparison purposes. *Id.*

---

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

The government seeks to compare DNA samples of the defendants to DNA recovered from the firearms. *Id.*

The government filed its motion for a buccal swab on July 22, 2019. Gov't's Mot., ECF No. 143. As it noted in that motion, Mr. Kaslov and Robert Evans did not oppose the government's request to take buccal swabs; Corry Blue Evans did not consent to the government's request to take buccal swabs; and Candy Evans had not yet expressed a position at the time of the filing. *Id.* at 1 n.1.

On September 3, 2019, having received no opposition over a month after the motion was filed, this Court granted the government's motion. ECF No. 173. Two weeks after the motion was granted, during a status hearing, Corry Blue Evans orally moved to late file an opposition to the motion and Mr. Kaslov and Candy Evans orally joined that motion. The Court granted the motion to late file, and Corry Blue Evans filed his opposition on September 20, 2019. Def.'s Opp'n, ECF No. 184. One day later, Mr. Kaslov withdrew his oral motion to join the opposition and notified the Court that he consented to providing a buccal swab. Archie Kaslov Notice, ECF No. 185. On September 23, 2019, Candy Evans filed a notice formally joining and adopting Corry Blue Evans' opposition. Candy Evans Notice, ECF No. 186. And on September 25, 2019, Robert Evans clarified that he was not joining the motion and stated that he already had provided a

buccal swab. Robert Evans Notice of Clarification, ECF No. 188. Accordingly, the dispute before the Court is the motion as applied to Corry Blue Evans and Candy Evans.

**II. Discussion**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The government's compulsion of a person to provide a DNA sample is a search under the Fourth Amendment. *Maryland v. King*, 569 U.S. 435, 446 (2013) (stating "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search"). "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Id.* (citation omitted). The application of "traditional standards of reasonableness" requires a court to weigh "the promotion of legitimate governmental interests" against "the degree to which [the search] intrudes upon an individual's privacy." *Id.*

There is surprisingly scant precedent in this Circuit governing when the government's attempt to compel a defendant to provide a buccal swab oversteps the line of reasonableness established in the Fourth Amendment. The government relies on cases in this court which focus on requests for buccal swabs for

5

the purpose of connecting defendants charged with firearm offenses to potential genetic material on a firearm, and to connect a defendant to either the alleged victim of the crime or other relevant evidence found at the crime scene. For example, in *United States v. Haight*, No. 15-cr-88 (JEB), 2015 WL 7985008, at *1 (D.D.C. Dec. 3, 2015), the government sought an order to compel a defendant who was charged with drug and gun offenses to provide a DNA sample to link that defendant to firearms that were recovered at the scene of the crime. *Id.* at *1. The court determined that the governmental interest in collecting the DNA was "both [strong[] and . . . specific]" because it sought to link the defendant to the firearms recovered by matching the defendant's potential genetic material on the firearms. *Id.* Significantly, the defendant in *Haight* was charged with "eight counts relating to guns and drugs." *Id.* The DNA evidence was relevant in that case because it could potentially provide evidence that the defendant possessed the weapons; a fact which clearly was relevant to the gun charge.

Similarly, in *United States v. Proctor*, 230 F. Supp. 3d 1, 2 (D.D.C. 2017), the government sought an order to compel several defendants to provide DNA evidence because it "intend[ed] to compare [the defendants'] DNA profiles to any DNA traces found on firearms recovered during a valid search of locations over which each [d]efendant exercised dominion and

control." The defendants in *Proctor* were charged with possession of firearms and the government sought to compare each defendants' DNA only to any DNA recovered on the respective firearm with whose possession each defendant was charged, not to all the weapons seized in the case. *Id.* The DNA evidence was relevant in *Proctor* because it was needed for comparison to actual evidence in that case that related to the charges. *Id.*

In *United States v. Ausby*, No.72-cr-67 (BAH), 2019 WL 3718942, at *1 (D.D.C. Aug. 7, 2019), the court granted a motion for an order requiring the defendant to submit a buccal swab when the government proffered evidence which "(1) link[ed] the defendant's gun to the murder weapon; (2) connect[ed] scented oil vials found at the crime scene to the defendant; (3) matche[d] a fingerprint from the crime scene to the defendant; and (4) indicate[d] that the defendant engaged in premeditated activity based on several eyewitnesses identifying the defendant as being present outside [the victim's] apartment in the days prior to her murder." In *Ausby*, the defendant successfully moved to vacate a prior felony murder and rape conviction, and the government was working to locate evidence for the defendant's new trial. *Id.* The government sought an order to compare the defendant's DNA to DNA that was recovered from the victim during her autopsy conducted several years earlier. *Id.* Based on the proffered evidence that linked the defendant to the crime scene

7

and to the murder weapon, the Court held that an order seeking a buccal swab for comparison of the defendant's DNA to DNA found on the victim was reasonable under the Fourth Amendment. *Id.* at *2-3.

Finally, in *United States v. Lassiter*, 607 F. Supp. 2d 162, 167-68 (D.D.C. 2009), the government moved for an order to allow a buccal swab to determine whether the defendant's DNA matched DNA recovered from an article of clothing in the area where the victim was assaulted. The court found that the DNA evidence "would be probative of the government's assertion that [the defendant] was at the crime scene and participated in the assault of [the victim]." *Id.* at 167. In other words, the government needed this evidence to link the defendant to the crime scene. *Id.* As the Court explained, "given the violent nature of the alleged acts in this case, the community's interest in accurately determining guilt or innocence is particularly strong." *Id.* These cases illustrate that the Fourth Amendment is not offended when the government seeks to compel a buccal swab for the purposes of linking the defendant to evidence that has relevance to the defendant's guilt or innocence of the charges against the defendant. In this case, however, the government proffers no facts that support the relevance of the possession of the weapons by Corry Blue Evans or Candy Evans to the crimes with which they are charged.

The government relies on *Maryland v. King* for the proposition that if an individual is arrested for a serious felony offense, then the government's compulsion of a buccal swab "following a valid arrest supported by probable cause . . . even without individualized suspicion or other criminal conduct, does not offend the Fourth Amendment." *See* Gov't's Mot., ECF No. 143 at 5-6. *Maryland v. King* concerned a statutorily-mandated requirement that state law enforcement take a buccal swab from arrestees during a routine booking procedure for serious offenses independent of a warrant or individualized suspicion. 569 U.S. 435. The Supreme Court determined that the government's legitimate governmental interest, mainly the "need for law enforcement officers in a safe and accurate way to process and identify the persons and possessions they must take into custody," substantially outweighed an arrestee's interests in limiting the minimal physical intrusion of the buccal cheek swab. *Id.* at 463-66. The Supreme Court explained:

> DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring [a person] to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.

*King*, 569 U.S. at 465-66.

The government's reliance on *King* is unpersuasive for several reasons. First, *King* does not directly control the Court's analysis because this case does not concern routine booking procedures for serious offenses. *See id.* In this case, the government requests authorization to conduct a buccal swab, not as part of a legitimate booking process, but for the purpose of obtaining evidence. The Court is not persuaded by the government's argument that the Fourth Amendment standard approved in *King* for statutorily-mandated DNA collection incident to arrest for serious offenses, occurring after every arrest for a serious crime, applies to cases like the present case in which the government searches a defendant well after his or her arrest for the purpose of searching for evidence of a crime. *King* stands only for the proposition that the governmental interests in routine booking procedures for serious offenses supported by probable cause outweigh the minimal intrusion of a buccal swab. *King*, 569 U.S. at 465–66; *id.* at 463 (stating that "by contrast to the **approved standard procedures incident to any arrest detailed** [in the Court's opinion]," a buccal swab involves a brief and minimal intrusion)(emphasis added)).

Second, and relatedly, the facts of this case give rise to serious Fourth Amendment concerns due to the role of law enforcement's discretion in taking the buccal swab samples. In

10

*King*, the Maryland statute held constitutional by the Supreme Court deprived law enforcement of any discretion in taking the buccal swab samples because the DNA collection booking procedure was statutorily prescribed to apply to all persons arrested for serious felonies. 569 U.S. at 448. Therefore, the Supreme Court noted, "[t]he DNA collection is not subject to the judgment of officers whose perspective might be colored by their primary involvement in the often competitive enterprise of ferreting out crime." *Id.* (internal quotation marks and citations omitted). In this case, unlike in *King*, there is no mechanism to curb the discretion of officers whose "perspective might be colored" by their goal of performing the normal need for law enforcement or, as the Supreme Court put it, "ferreting out crime." *Id.* It is for that reason that the Supreme Court has never sanctioned suspicionless searches when the government's purpose is to discover evidence of a crime or to fulfill the normal need for law enforcement. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) (explaining the Court had upheld "certain regimes of suspicionless searches where the program was designed to serve 'special needs, beyond the normal need for law enforcement.'").

Furthermore, even if *King* does control, the governmental interests in this case are different from those recognized in *King*. The governmental interests in *King* were: (1) identifying

11

the arrestee; (2) discovering a suspect's criminal history; and (3) determining if the arrestee should be released into the community. *See King*, 569 U.S. 450-53. In light of those interests compared to the minimal intrusion attendant to the buccal swab, the Court held that the search involved in *King*—a statutorily mandated booking procedure—did not offend the Fourth Amendment. *Id.* at 454. Here, the buccal swab is not sought for purposes of identification or for determining the defendants' criminal records to ensure the safety of arresting officers, jail staff, or other detainees. *See id*. at 450-52. Nor is the buccal swab sought to assist the Court in determining the risk of flight or danger posed by the defendants' release. *Id.* at 453. Indeed, the defendants in this case have been released for several months and have not had any issues on pretrial supervision. Rather, the governmental interest in this motion is solely investigative. The government seeks to link Corry Blue Evans and Candy Evans to weapons that were purchased by another defendant but the government has not articulated the significance of these weapons to the offenses with which they are charged. The Court recognizes that the intrusion incurred by a buccal swab is minimal, but even a minimal intrusion outweighs a governmental interest that is de minimis at best.

Because this motion concerns a search for evidence of a crime, not a routine booking procedure, the government is

required to show not only general reasonableness but individualized suspicion. *See Edmond*, 531 U.S. at 44("declin[ing] to suspend the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crime."); *see also King*, 569 U.S. 435 at 468 (Scalia, J.,)(dissenting)(stating"[i]t is only when a governmental purpose aside from crime-solving is at stake that we engage in the free-form 'reasonableness inquiry'"). The government correctly notes that probable cause for a buccal swab requires a fair probability that the DNA is "evidence of a crime." Gov't's Reply, ECF No. 187 at 7 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The government further recognizes that evidence of a crime encompasses all relevant evidence. *Id.* at 10 (citing *Michigan v. Clifford*, 464 U.S. 287, 294 (1984) ("[A] criminal search warrant may be obtained only on a showing of probable cause to believe that relevant evidence will be found in the place to be searched.")). Although the government points to the indictment, the indictment makes no reference whatsoever to any weapons or violent behavior on the part of Corry Blue Evans or Candy Evans.[2] *See generally*

---

[2] The indictment alleged threats by Tony John Evans. Tony John Evans has not opposed the motion. Candy Evans has only been indicted on charges related to witness tampering and there are no allegations related to her use of any weapons.

13

Indictment, ECF No. 1. The grand jury found probable cause to believe that Corry Blue Evans committed the crimes alleged in the indictment: wire fraud, bank fraud, and extortion, and that there was probable cause that Candy Evans tampered with witnesses. *Id.* However, there is no allegation that either of these two defendants used a gun during any of the criminal acts alleged, and there is no need to prove the use of a firearm in any of the charges filed against any defendant. *Cf. United States v. Proctor*, 230 F. Supp. 3d 1, 2 (D.D.C. 2017) (noting that the motion for DNA swab to compare DNA found on a firearm was proper in part because a "grand jury[] found probable cause exists that each Defendant possessed the respective firearm recovered").[3] The government has failed to show how there is probable cause for the search to which the government seeks to compel the defendants to submit, or even the relevance of the firearms to its case against these two defendants.

The government's secondary argument, that the existence of a conspiracy supports probable cause to search every person in

---

[3] The other cases the government relies on similarly support the Court's analysis. *See United States v. Alvarez-Herrera*, No. 13-cr-61, 2014 WL 1599506, at *2 (E.D.N.C. Apr. 21, 2014)("granting government's motion for DNA samples of indicted defendant to *link* him to crime scene");*United States v. Wilhere*, 89 F. Supp. 3d 915, 919 (E.D. Ky. 2015)(finding probable cause to search the defendant for his DNA where there "might be DNA on the victim's body that could be compared to Defendant's DNA" thereby making the fact that he committed the offense more likely).

the conspiracy regardless of whether there is probable cause that there is evidence of a crime related to the person searched, similarly fails. *See* Gov't's Reply, ECF No. 187 at 11–12. Although not entirely clear, the government's argument appears to be that a person in a conspiracy can be held liable for the substantive offenses committed by a co-conspirator that are reasonably foreseeable and committed in furtherance of the conspiracy, and therefore probable cause to search one defendant is probable cause to search them all. *Id.* Specifically, the government contends, as long as there is evidence that a co-conspirator carried or used a firearm in furtherance of a conspiracy, any defendant can be held liable as if he or she carried the firearm. *Id.* Therefore, *a fortiori*, the government argues, the presence of the defendants' DNA on the firearms would make it more likely than not that they were aware of the use of the firearms during the period of the conspiracy and therefore would be evidence of relevant criminal activity. *Id.*

The Court declines to endorse this novel theory of probable cause. Although it is true that liability for possession of a weapon, or other gun charges, may, in some cases, be premised on co-conspirator liability, that does not change the fact that there are no gun charges or allegations that a gun was used by any defendant in this case. *See United States v. McGill*, 815 F.3d 846, 945 (D.C. Cir. 2016) (stating liability for firearms

15

charges may be premised on conspiracy liability). A rule that probable cause to search a co-conspirator allows the government to search everyone in the conspiracy, independent of individualized suspicion for each person searched, is in direct contravention of D.C. Circuit precedent that probable cause to search or seize a person must be "particularized with respect to the person to be searched or seized." *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006); *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (stating the probable cause requirement "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be").

**III. Conclusion**

For the foregoing reasons, the government's motion for an order requiring defendants to provide a buccal swab as to Corry Blue Evans and Candy Evans is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:   Emmet G. Sullivan
            United States District Judge
            December 6, 2019**