IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          CR No. 1:18-cr-00103-EGS


v.                                Washington, DC
                                  Thursday, September 19, 2019
                                  1:00 p.m.
ROBERT EVANS, CORRY BLUE EVANS,
ARCHIE KASLOV and CANDY EVANS,

          Defendants.

- - - - - - - - - - - - - - - - x
_____

TRANSCRIPT OF STATUS HEARING
HELD BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the United States:    David B. Kent, Esq.
                          Kondi J. Kleinman, Esq.
                          U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
                          555 Fourth Street, NW
                          Washington, DC 20530
                          (202) 252-7762


For the Defendants:       Elita C. Amato, Esq.
                          LAW OFFICES OF ELITA C. AMATO, ESQ.
                          2111 Wilson Boulevard
                          8th Floor
                          Arlington, VA 22201
                          (703) 522-5900

                          Leon Jacobson, Esq.
                          741 Madison Avenue
                          4th Floor
                          New York, NY 10065
                          (917) 689-0580

                          Margaret A. Anthony, Esq.
                          7401 Eastmoreland Road
                          Suite 714
                          Annandale, VA 22003
                          (571) 263-1573

APPEARANCES CONTINUED:

For the Defendants:      Howard B. Katzoff, Esq.
                         LAW OFFICES OF HOWARD KATZOFF
                         717 D Street, NW
                         Suite 310
                         Washington, DC 20004
                         (202) 783-6414

                         George Vomvolakis, Esq.
                         LAW OFFICE OF GEORGE VOMVOLAKIS
                         275 Madison Avenue
                         35th Floor
                         New York, NY 10016
                         (212) 682-0700

Court Reporter:          Timothy R. Miller, RPR, CRR, NJ-CCR
                         Official Court Reporter
                         U.S. Courthouse, Room 6722
                         333 Constitution Avenue, NW
                         Washington, DC 20001
                         (202) 354-3111

Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription.

1                    **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  Your Honor, this is criminal

3     case 18-103, United States of America v. Robert Evans, Corry

4     Evans, Archie Kaslov and Candy Evans.

5              Will parties please come forward to this lectern;

6     identify yourselves for the record.

7              MR. KENT:  David Kent on behalf of the United

8     States.  Good afternoon.

9              THE COURT:  Good afternoon.

10             MR. KLEINMAN:  Good afternoon, Your Honor.  Kondi

11    Kleinman for the United States.

12             THE COURT:  Good afternoon.

13             MS. AMATO:  Good afternoon, Your Honor.  Elita

14    Amato on behalf of Robert Evans, who is sitting right across

15    from me.

16             THE COURT:  Mr. Evans; Ms. Amato.

17             DEFENDANT ROBERT EVANS:  Good afternoon, Your

18    Honor.

19             MR. JACOBSON:  Good afternoon, Your Honor.  Leon

20    Jacobson for Corry Evans sitting across from me.

21             THE COURT:  Mr. Evans --

22             DEFENDANT CORRY EVANS:  Good afternoon, Your

23    Honor.

24             THE COURT:  -- counsel, good afternoon.

25             MR. JACOBSON:  And I'm joined by my sponsoring

```
 1    counsel, Margaret Anthony.
 2              THE COURT:  All right.  How are you?
 3              MS. ANTHONY:  Good afternoon, Your Honor.
 4              THE COURT:  Okay.
 5              MR. KATZOFF:  Good afternoon, Your Honor.  Howard
 6    Katzoff on behalf of Archie Kaslov, who is in the third --
 7              THE COURT:  Mr. Kaslov --
 8              MR. KATZOFF:  -- seat.
 9              DEFENDANT KASLOV:  Good afternoon, Your Honor.
10              THE COURT:  -- and Mr. Katzoff.  That's a
11    mouthful.
12              MR. KATZOFF:  Yes, it is.  It's confused my
13    secretary more than a few times and she was --
14              (Laughter.)
15              THE COURT:  All right.  So what are we doing?  No
16    trial coming up soon?  What do you want to do?  How do you
17    wish to proceed?
18              MR. VOMVOLAKIS:  Judge, I'm sorry to interrupt.
19    Appearing telephonically, George Vomvolakis for Candy Evans.
20    Good afternoon.
21              THE COURT:  Yes.  Good afternoon, counsel.  I hope
22    you feel better.  Good afternoon.
23              How would you --
24              MR. VOMVOLAKIS:  Thank you.
25              THE COURT:  -- like to proceed, counsel?
```

1          MS. AMATO:  Well, Your Honor, I'll jump up.

2          So I believe, at this point, we will set another

3     trial date, and also, we would like to also know if we could

4     set an additional motions date since we're putting the trial

5     date off and, as for the motions that were filed, some of us

6     did not file our responses or replies, basically, to the

7     Government's pleadings, and so we would ask if we could, as

8     well, have additional time to file any opposition and --

9          THE COURT:  Do you have suggested dates?  If I can

10     accommodate everyone, I'll certainly try and do so.

11          MS. AMATO:  We -- well, we'll -- I'm going to

12     start with the trial date.  So we've -- the parties would

13     suggest April the 27th, I believe.  It was that Monday.

14          (Brief pause.)

15          And part of the reason, Your Honor, we're asking

16     that particular time period is, I know as to my schedule --

17     and, maybe, I'm the only one who's got a busy schedule so

18     far next year -- but I'm not available, really, until then.

19     So --

20          THE COURT:  That's fine with me.  Is that a good

21     date for the Government?

22          MR. KENT:  Yes, Your Honor.

23          THE COURT:  All right.  April 27th for jury

24     selection.  And do you want to suggest a motions hearing

25     date?  Maybe a month before or so.  You're not available,

1      though; right?

2                  MS. AMATO:  I might not be, Your Honor.  So --

3      well, I mean, I should be available beginning April, at

4      least on a Friday.

5                  THE COURT:  April the 10th?  April the 10th?

6      That's Good Friday.  People may be out for whatever reasons.

7      Easter is that Sunday.  Monday's probably a bad -- Easter

8      Monday's -- that's Easter egg rolling day.  That's a bad

9      day.  I mean, you've got the challenging calendar.  You tell

10     me what day --

11                 MR. KATZOFF:  Your Honor, may I speak to Ms. Amato

12     for a second?

13                 THE COURT:  Sure.

14                 MS. AMATO:  Yes, sure.

15                 MR. KATZOFF:  Okay.  Thank you.

16                 (Brief pause.)

17                 THE COURT:  Can I ask you this.  Can I interrupt

18     just for one second.  Are these realistic trial dates or do

19     you need some more time to discuss before you -- before we

20     determine whether trial is on or not?  I mean, I don't mind

21     blocking off some dates, but I normally -- I think I blocked

22     off a month before or so.

23                 MS. AMATO:  Well --

24                 THE COURT:  What would you like to do?  I mean,

25     I'm happy --

```
 1                  MS. AMATO:  Court's indulgence --

 2                  THE COURT:  -- to do that, if you want to pick a

 3      date.

 4                  MS. AMATO:  Do you want to --

 5                  MR. KATZOFF:  Your Honor, I was discussing with

 6      Ms. Amato a motions date to discuss with Government counsel

 7      for trying to perhaps find a date in February; gives the

 8      Government an opportunity, you know, a little bit further in

 9      advance of trial; depending on the judge's ruling, gives the

10      defense a little bit of time.  That's what I was presenting

11      to Ms. Amato.  I think --

12                  THE COURT:  Sure.

13                  MR. KATZOFF:  -- it's probably important --

14                  THE COURT:  Counsel, I'm flexible, you know?

15                  MR. KATZOFF:  -- to --

16                  THE COURT:  I'm flexible.

17                  MR. KATZOFF:  -- pick a date.  I'll represent with

18      regard to my client, it's a slightly different posture

19      because we are in discussions, as the Court might be aware,

20      and so we are agreeing to waive speedy trial.  Again, I'm

21      speaking with regard to Mr. Kaslov's interests.  And -- but

22      we might ask for some additional time to address that, and

23      if there's an April trial date, I think there's sufficient

24      time for us still to propose a motions schedule to be on

25      track with the other defendants.  So --
```

```
 1            THE COURT:  But I don't think Ms. Amato's
 2   available, though, in February; right?
 3            MS. AMATO:  Well, it would have to be a Friday,
 4   Your Honor.  I -- the court that I have -- the trial that's
 5   scheduled is in this courthouse.  So Fridays, as Your Honor
 6   knows, we usually don't sit.  So I would imagine -- but,
 7   Your Honor -- I mean, I'm also open to just putting this --
 8   kicking this down the road a little bit and having another
 9   status hearing and then see where the parties are at in
10   terms of, are we going to pick a real trial date or not,
11   unless the Government opposes that, but I don't oppose that.
12            MR. JACOBSON:  Well, personally, Your Honor, I
13   would be in favor of setting a trial date so that we are
14   clear on when the trial is expected to start --
15            THE COURT:  That's fine.  Yeah.  April 27th.
16   That's fine.
17            MR. JACOBSON:  -- and have perhaps a status
18   hearing --
19            THE COURT:  All right.  You're going to be in a
20   lengthy trial in this courthouse, Ms. Amato?
21            MS. AMATO:  I'm sorry?  Yes.
22            THE COURT:  You'll be in a lengthy trial?
23            MS. AMATO:  Yes.  Mm-hmm.
24            THE COURT:  Well, if you're in a lengthy trial, is
25   that going to, you know, impact your ability to be available
```

```
1    for a motions hearing in February?
2              MS. AMATO:  I mean, it makes it a little tough,
3    but I believe Fridays we will be not sitting, and so
4    physically I could be here and I -- I mean, I can appreciate
5    --
6              THE COURT:  When is that trial scheduled to start?
7    Maybe --
8              MS. AMATO:  That trial is scheduled to start on
9    February 3rd.
10             THE COURT:  February 3rd?  All right.  So --
11             (Brief pause.)
12             I was trying to think.  Maybe January -- late
13   January, was that -- would that be more -- you'll be
14   preparing for --
15             MS. AMATO:  January would be worse for me, Your
16   Honor --
17             THE COURT:  Yeah.
18             MS. AMATO:  -- because I actually have a trial in
19   another jurisdiction.
20             THE COURT:  All right.  So how about February the
21   28th for a motions hearing date?  Does that --
22             MS. AMATO:  That works for me.
23             THE COURT:  Where do you think you'll be with your
24   trial?
25             MS. AMATO:  Well, it -- so the -- we have been
```

```
 1    asked to put off February through March for two months.
 2              THE COURT:  Oh.  Really?  Okay.  All right.
 3              MS. AMATO:  And --
 4              THE COURT:  All right.  Here's another suggestion.
 5    Look -- I mean, I've been stretched in different directions.
 6    I know how challenging that can be.  So another suggestion
 7    is -- would be to -- you've got the challenging calendar.
 8    What about after Memorial Day for the trial?
 9              MS. AMATO:  That's fine with me, Your Honor.
10              THE COURT:  I mean, maybe, June 1st for trial and
11    then move -- just move everything, and then I'm open to
12    suggestions for the motions hearing date.  Maybe April.  I
13    don't know.  Is that too far off?
14              MS. AMATO:  I mean, I'm available in June.  That's
15    fine.
16              THE COURT:  Yeah.  Well, let me guess.  Everyone
17    else is tied up now; right?
18              MR. KATZOFF:  No, Your Honor.
19              THE COURT:  All right.  Is that too far off?
20              (Brief pause.)
21              You know what?
22              MR. JACOBSON:  Just a little --
23              THE COURT:  I could disappear for a few minutes --
24              MS. AMATO:  I mean --
25              THE COURT:  -- and you can --
```

```
1              MS. AMATO:  -- it's preferable for me --
2              THE COURT:  -- talk among yourselves --
3              MS. AMATO:  -- but --
4              THE COURT:  -- if you want to, you know?  Do you
5       want to talk among yourselves?  I'm entirely -- I'm the more
6       flexible of anyone, I think, right now.  So I mean, I don't
7       have strong feelings about the dates, but I know --
8              MS. AMATO:  So that's the --
9              THE COURT:  -- how difficult it is if you're on
10      a --
11             MS. AMATO:  Your Honor, the --
12             THE COURT:  -- lengthy trial --
13             MS. AMATO:  That's --
14             THE COURT:  -- and you have to show up here on a
15      Friday.
16             MS. AMATO:  That works for me, Your Honor.
17      That's -- I mean, that, obviously, is better for me because
18      I hate to go from one trial to another and I'd like to have
19      a bit of a break.  So that's --
20             THE COURT:  I mean, here's the other --
21             MS. AMATO:  I'm not -- that's fine.
22             THE COURT:  Here's the other suggestion.  I mean,
23      it's only September now.  What about -- let me think this
24      thing through here a second.  I don't want to shortchange
25      myself in December.  But what about early January for a
```

```
1     motions hearing?

2               MS. AMATO:  Oh, well, Your Honor, the problem is I

3     --

4               THE COURT:  You have another trial?

5               MS. AMATO:  Yes.  Unfortunately, I start --

6               THE COURT:  You're in demand these days.

7               (Laughter.)

8               MS. AMATO:  It's -- Your Honor, I -- it's been

9     busy.  Yeah.  I mean, these things might all disappear for

10    all I know --

11              THE COURT:  That's a compliment.

12              MS. AMATO:  -- but, you know -- and that's --

13              THE COURT:  That's a -- I mean, that's great --

14              MS. AMATO:  Thank you.

15              THE COURT:  -- that you're that busy, you know?

16    So --

17              MS. AMATO:  Thank you.

18              THE COURT:  All right.  I give up.  What do you

19    want to do?  Do you want --

20              MS. AMATO:  I'm --

21              THE COURT:  -- something in December?  It's only

22    September.

23              MS. AMATO:  June -- Your Honor, I -- the

24    Government is saying they're fine with a June trial date.

25    I'm fine with a June trial date.  So --
```

1      THE COURT:  Really?  But everyone else is --

2  they're not --

3      MR. KATZOFF:  No, I'm fine with the June trial

4  date, Your Honor.

5      THE COURT:  All right.

6      MR. KATZOFF:  Whatever date the Court and

7  Ms. Amato --

8      THE COURT:  Are you okay with that, counsel?  I

9  mean, unless you have a trial -- I mean, I might have to do

10  it, unless you're scheduled to be in trial somewhere, you

11  know?

12      MR. JACOBSON:  I just -- I'm not sure what --

13      MS. ANTHONY:  Your Honor --

14      THE COURT:  June 1st?

15      MS. ANTHONY:  -- I'm also talking to the client,

16  and he would really like a later trial date.

17      THE COURT:  Well, your client probably would never

18  want a trial date.

19      MS. ANTHONY:  Right.

20      THE COURT:  Yeah.

21      MS. ANTHONY:  Right.

22      THE COURT:  So I mean, let's be realistic, you

23  know?  So June's fine with your client.  June 1st okay?

24      What about the attorney on the phone, is that all

25  right with you?

```
 1              MR. VOMVOLAKIS:  Yes, Judge.

 2              THE COURT:  All right.  Is that okay?  All right.

 3     June --

 4              MR. JACOBSON:  Yes, Your Honor.

 5              THE COURT:  -- 1st.  All right.  And then -- all

 6     right.  And then how about April the 28th for a motions

 7     hearing?  What about that?

 8              MS. AMATO:  28th?

 9              THE COURT:  At 10:00 o'clock.

10              MS. AMATO:  What day is that?  Let's see.

11              THE COURT:  Are you in trial somewhere?

12              MS. AMATO:  No, I'm not.  Not yet.

13              (Laughter.)

14              Let's see.  Where is April -- that's fine for me,

15     Your Honor.

16              THE COURT:  Are you sure?

17              Any objections, anyone?

18              (Brief pause.)

19              All right.

20              MR. VOMVOLAKIS:  No.

21              THE COURT:  Okay.  All right.  These are firm

22     dates.  It's, you know -- I mean, as firm as we can make

23     them.

24              Should I schedule -- what about replies and

25     responses?  We have some time, obviously.  Suggest a date.
```

1    I'm sure it will be good.  End of the year?

2              MS. AMATO:  Sure, Your Honor.  Yes --

3              THE COURT:  All right.

4              MS. AMATO:  -- that's good.

5              THE COURT:  Are these replies?  These are reply

6    pleadings.

7              All right.  Let's say the -- December the --

8    December 28th -- just say December 30th for the defense

9    counsels' final responses, replies.

10             So what else can we talk about?  Do you -- would

11   you like a -- to come back for a status hearing sometime

12   between now and next spring?  Next summer?

13             MS. AMATO:  That makes sense, Your Honor.

14             THE COURT:  Why don't you -- you have the

15   challenging calendar.  Pick a date.

16             MS. AMATO:  Yeah, I do.  Well, maybe, we want to

17   come in early December -- come back in early December.

18             THE COURT:  Early when?

19             MS. AMATO:  Early December.  Excuse me.

20             THE COURT:  Sure.  That's fine.  Yeah.  Suggest a

21   date.  Maybe I can -- again, if I can accommodate you -- I

22   may be in trial.  I don't know.

23             Is that case going to go to trial?

24             (Brief pause.)

25             When do you want to -- December the 20th.  I may

1    be in trial.  So I'm going to have to start scheduling

2    status hearings on Friday.  Either the 5th, 6th or 20th of

3    December.

4              MS. AMATO:  The 20th is no good for me, but the

5    5th and 6th work for me.

6              THE COURT:  How about December the 5th, counsel,

7    at -- let's see -- it's better in the afternoon for the --

8    there are two attorneys coming from New York; right?  Well,

9    that -- all of you are coming from New York; right?  Did you

10   come down on the train today?

11             DEFENDANT ROBERT EVANS:  Yes.

12             DEFENDANT CORRY EVANS:  Yes.

13             DEFENDANT KASLOV:  Yes, Your Honor.

14             THE COURT:  Do you prefer in the afternoon?

15             MR. JACOBSON:  Yes, Judge.

16             THE COURT:  Is the later -- all right.  How about

17   2:00 o'clock on the 5th, all right --

18             DEFENDANT KASLOV:  Beautiful.

19             THE COURT:  -- for everyone?

20             DEFENDANT KASLOV:  Thank you, Your Honor.

21             THE COURT:  All right.  What else can we talk

22   about?

23             MS. AMATO:  Are there any --

24             (Brief pause.)

25             Court's indulgence?

```
1                    THE COURT:  Sure.

2                    (Brief pause.)

3                    MR. KATZOFF:  Your Honor --

4                    THE COURT:  Yes?

5                    MR. KATZOFF:  The -- do you need to --

6                    MS. AMATO:  I don't need -- go ahead.

7                    MR. KATZOFF:  Okay.  On behalf of Mr. Kaslov and

8       perhaps Ms. Evans -- I'll let her counsel speak -- but we

9       have, I believe, a status -- a report due shortly.  In light

10      of the current schedule, I was going to ask for 30 days for

11      us to try to see if we can cross the Ts, dot the Is and --

12                   THE COURT:  Sure.  What date is that due now?

13                   MR. KATZOFF:  -- make a report --

14                   THE COURT:  What date is it due?

15                   MR. KATZOFF:  I just said 30 days.  I didn't

16      really look at my calendar, Your Honor.  Give me a second.

17                   THE COURT:  What date is that?

18                   MR. VOMVOLAKIS:  I join in that application,

19      Judge.

20                   THE COURT:  Sure.

21                   MR. KATZOFF:  October 18th or -- October 18th,

22      Your Honor.

23                   THE COURT:  It's the 18th?  All right.  What about

24      30 days thereafter?  How about November the 19th?

25                   (Brief pause.)
```

1             Well, any day you want.  I mean, just as long as

2    it's before the next status hearing date.

3             MR. KATZOFF:  No, we'll -- I think the 18th for

4    now, Your Honor.  Our current report would be due before

5    that.  If we can have until the 18th, if we need additional

6    time, we'll --

7             THE COURT:  18th of November?

8             MR. KATZOFF:  Of -- no, of October, and if we need

9    additional time, we'll request it at that time.

10            THE COURT:  Yeah.  I thought it was due in

11   October.

12            MR. KATZOFF:  And just --

13            THE COURT:  I thought it was due in October.  It

14   was not?  All right.

15            MR. KATZOFF:  I actually --

16            THE COURT:  October the 18th.

17            MR. KATZOFF:  -- didn't look at that before I

18   came, Your Honor --

19            THE COURT:  All right.  October the 18th is fine.

20            MR. KATZOFF:  Thank you.

21            THE COURT:  Okay.  Anyone else?

22            MR. KENT:  Your Honor, the Government would like

23   to put one matter on the record --

24            THE COURT:  Sure.

25            MR. KENT:  -- and make two additional requests.

1            The Government, as the Court is aware, is engaged

2       in ongoing plea discussions with Corry Evans -- I'm sorry,

3       not Corry Evans -- Candy Evans and Archie Kaslov through

4       their counsel.  The Government has extended plea offers to

5       both Robert Evans and Corry Blue Evans.  Those offers were

6       extended back on August 23rd of 2018.  The Government has

7       had extended discussions both with Robert Evans, Candy Evans

8       and Archie Kaslov; no real substantive discussions with

9       Corry Evans.  The -- as part of the Government's discussions

10      with Robert Evans, the Government extended a new plea offer

11      to Robert Evans on August 8th, 2019, and essentially gave

12      him the -- extended the same offer to him as we extended to

13      his brother Co-Defendant Tony Evans.  It is our

14      understanding through conversations with Ms. Amato that

15      Robert Evans has rejected the Government's initial plea

16      offer and its reextended plea offer.  The Government has

17      informed Ms. Amato that the Government is withdrawing all

18      prior offers to Robert Evans at this point.  The Government

19      also is withdrawing its plea offer to Corry Evans at this

20      point.  So that's the first issue.

21            The second issue is it's come to the Government's

22      attention that counsel for one of the defendants has engaged

23      in some communications with a co-defendant outside the

24      presence of that respective co-defendant's counsel.  The

25      Government raises this issue because it certainly raises

```
 1    conflict issues which, in some ways --

 2              THE COURT:  Well, that's ethical issues, also.

 3              MR. KENT:  -- can play out to the Government's

 4    detriment, certainly.  So the Government is just raising

 5    this issue for the Court's awareness at this juncture.

 6              And the third point is that with the defendants'

 7    motion to continue the trial date and, certainly, the

 8    pendency of the motions in this case, the Government would

 9    request, out of an abundance of caution, that these

10    defendants agree to waive or exclude time under the Speedy

11    Trial Act until the next date before this Court.

12              THE COURT:  All right.  So correct me if I'm

13    wrong.  But there are two defendants who remain available

14    for trial; correct?

15              MR. KENT:  That's correct --

16              THE COURT:  Right.

17              MR. KENT:  -- well, technically, four, but --

18              THE COURT:  All right.

19              MR. KENT:  -- two we're engaging in ongoing plea

20    discussions with.

21              THE COURT:  Right.  All right.  So it's -- for the

22    two who are available, is it the Government's position that

23    plea offers to those two have been withdrawn?

24              MR. KENT:  That's correct.

25              THE COURT:  That's what I thought.  All right.  So
```

1    why are we looking at a trial in June, then?  Why don't we

2    just try the case this year?

3             MR. KENT:  It was the -- I think --

4             THE COURT:  I mean, I've already ruled on it.  I

5    think the request was because of voluminous discovery, an

6    additional 1,200 documents, I think.  All right.  I'm not

7    going to go back on it, but I'm just -- it just raises the

8    question, if there's nothing to be gained by the length of

9    time -- I shouldn't say nothing, because it's going to

10   benefit counsel to give counsel the time counsel needs to go

11   over all the discovery.

12            MR. KENT:  The Government was certainly prepared

13   to try this case in early November.  What -- we certainly

14   understand this is a complicated case.  There are a host of

15   things that have happened over this time period and,

16   certainly, that's why the Government did not oppose the

17   defendants' joint request to continue --

18            THE COURT:  All right.

19            MR. KENT:  -- the trial date.

20            THE COURT:  Okay.  All right.  Well, I'm not going

21   to resurrect that issue, then.  I've already ruled on it.

22   So -- all right.  You want a June trial date.  But it

23   doesn't sound like they're going to -- the Government's

24   going to make any additional offers.  It doesn't sound like

25   it.  I mean, that wouldn't be the -- although that wouldn't

1    be the first time the Government's, This is final, and, you

2    know -- and things happen; right?  So -- but anyway,

3    whatever happens, that's between the Government and defense

4    counsel.

5              MS. AMATO:  Right.

6              THE COURT:  So --

7              MS. AMATO:  And I mean, I hear what the Government

8    is saying, but we do have additional time now and -- I mean,

9    certainly one of the reasons why I joined the motion to

10   continue was with the thought that there will be more time

11   to potentially talk with my client and talk with the

12   Government about a potential resolution.  So -- and I am --

13   I hear what the Government says, but that doesn't -- it's

14   not going to stop me from doing my job --

15             THE COURT:  Right.

16             MS. AMATO:  -- regardless on that avenue.

17             And, number two, in terms of the speedy trial, my

18   client does waive his right to a speedy trial, Mr. --

19             THE COURT:  All right.

20             MS. AMATO:  -- Robert Evans.

21             THE COURT:  Thank you.

22             Let me just pose a question to all defendants.  Is

23   there anyone -- we've had these discussions before about

24   tolling and speedy trial rights, and I think it's probably

25   as a matter of fact and law pending motions have tolled.

1    But out of an abundance of caution, are there -- is there

2    any defendant who objects to excluding time from speedy

3    trial calculations?  And if so, let me know now.  And does

4    anyone have any questions about his or her rights in that

5    regard?

6              And your client's not on the phone, is she,

7    counsel?

8              MR. VOMVOLAKIS:  No, Your Honor, but I have spoken

9    to her, and she has agreed to the waiver.

10             THE COURT:  All right.  I just need her written

11   waiver, though, if she voluntarily wants to sign a written

12   waiver, all right --

13             MR. VOMVOLAKIS:  That's fine, Judge.

14             THE COURT:  -- to exclude time.

15             All right.  But the case is --

16             MR. VOMVOLAKIS:  Exclude --

17             THE COURT:  -- indeed complex.  There are pending

18   motions, but I think, out of an abundance of caution, I

19   should ask anyone if he or she has objections.  Ms. Candy

20   Evans does not have objection.  She's going to sign a

21   waiver.

22             Any objections, counsel?

23             MR. KATZOFF:  On behalf of my client, Your Honor,

24   no.

25             DEFENDANT KASLOV:  No objection.

```
 1                  THE COURT:  All right.
 2                  MR. JACOBSON:  Not on behalf of Corry Evans --
 3                  THE COURT:  All right.
 4                  MR. JACOBSON:  -- Your Honor.
 5                  THE COURT:  Ms. Amato, your client?
 6                  MS. AMATO:  Yes, Your Honor.  As I said before --
 7                  THE COURT:  All right.  Okay.  And does any
 8      defendant have any questions that he would like to ask me
 9      about the exclusion of time?
10                  DEFENDANT KASLOV:  No, sir.  Thank you.
11                  THE COURT:  All right.  Okay.
12                  (Brief pause.)
13                  No questions?  Okay.  No questions, Mr. Kaslov?
14      All right.
15                  DEFENDANT KASLOV:  No.  No, Your Honor.
16                  THE COURT:  All right.  Okay.  All right, then.
17      The record will reflect that the time between now and --
18      what, the trial date --
19                  MR. JACOBSON:  Your Honor --
20                  THE COURT:  -- and the trial date shall be
21      excluded from speedy trial calculations.  Any objection to
22      that?
23                  MR. KATZOFF:  No, Your Honor.
24                  MR. JACOBSON:  No, Your Honor.
25                  MS. AMATO:  No, Your Honor.
```

1           THE COURT:  All right.  And the docket will

2   reflect that.  And there are compelling reasons.  The case

3   is extremely complex.  Again, I think the motions probably

4   toll as a matter of fact and law.  And I'm satisfied that

5   everyone has voluntarily acknowledged that he or she wishes

6   to exclude time from today's date up through the -- June the

7   1st of next year.

8           MR. JACOBSON:  (Indicating.)

9           THE COURT:  Yes, counsel?

10          MR. JACOBSON:  Your Honor, thank you.  I wanted to

11  bring up another issue.

12          We had consented -- all the parties had consented

13  to the protective order that is currently in place.  I've

14  had some conversations with Government counsel about the

15  difficulty we've had with this amount of discovery of

16  reviewing the case -- well, difficulty that I've had

17  reviewing the case fully with my client because, with a

18  protective order, it would require us to be in the same room

19  instead of me being able to give him a packet of documents

20  to review and then meet and discuss later.  So Government

21  counsel has indicated that they would be willing to discuss

22  specific types and categories of documents that they would

23  allow excluding for the protective -- from the protective

24  order, and so I'm working on putting together a more

25  comprehensive list of that, but I've -- but there were a

1    couple documents that have already been discussed and that

2    Government counsel has agreed would -- we would be allowed

3    to show to our client to -- specifically to my request, and

4    that was 302s pertaining to family members of my client, and

5    so I wanted to -- first of all, out of an abundance of

6    caution, to alert the Court that some of those documents

7    that are covered by the protective order have been consented

8    to be shown to defendants by Government counsel, and perhaps

9    I should file --

10                THE COURT:  You should get with the Government and

11   submit a proposed order with counsel that -- I mean, it

12   sounds like there are reasons to depart from this protective

13   order that everyone's agreed to and, if so, that's fine, but

14   it should be memorialized in writing so there's no confusion

15   down the line about what he said or she said.

16                MR. JACOBSON:  Okay.

17                THE COURT:  All right.

18                MR. JACOBSON:  So --

19                THE COURT:  And if you can't, you know -- if you

20   can't reach an agreement, then file whatever pleading you

21   believe is appropriate.

22                MR. JACOBSON:  All right.  Thank you very much,

23   Judge.

24                THE COURT:  All right.  All right.  Anyone else?

25                (Brief pause.)

1          All right.  Mr. Kent?  Counsel?  Anything else?

2          MR. KENT:  Nothing further, Your Honor.

3          THE COURT:  All right.  Do you want to comment on

4     that last point?

5          MR. KENT:  The -- with each batch of discovery

6     that we've produced, we've produced an index, and the index

7     indicates what has been designated as sensitive under the

8     terms of the protective order, and we actually italicize and

9     highlight it as well, and there are other items that are not

10    sensitive.  Only the sensitive items -- for example,

11    sensitive items might be financial records of third parties

12    or sensitive items might be 302s relating to information

13    provided by cooperating witnesses.  Those are designated as

14    sensitive and, essentially, defendants can see that

15    material; can access it, but they just cannot retain copies

16    of that material.  All of the other information -- the

17    non-sensitive information, and most of the discovery in this

18    case is non-sensitive -- the defendants can have access to

19    them; can keep and retain them, as necessary; and certainly

20    we will, you know -- any specific requests, we'll certainly

21    speak with defense counsel and try and accommodate them to

22    the extent possible.

23         One other point I wanted to raise which I

24    neglected to raise earlier, this Court has -- and this is

25    for the Court's information -- this Court has granted the

1    Government's motion for law enforcement to obtain a buccal

2    swab from each of these defendants which the FBI agents will

3    do following this hearing outside of this building.

4             THE COURT:  All right.  That's fine.

5             Let me ask you about the sensitive information.

6    Does the sensitive information comprise a small percentage

7    of the discoverable material?

8             MR. KENT:  I don't know what the percentage is.  I

9    don't know that I'd say it's a small percentage --

10            THE COURT:  All right.

11            MR. KENT:  -- but it's -- for example -- to give

12   the Court an example, the --

13            THE COURT:  I think you have the agreement of

14   defense counsel.  They're nodding their heads it's not a

15   small percentage.

16            MR. KENT:  It's -- I wouldn't say it's a small

17   percentage.  I wouldn't -- I'd say more than half of the

18   discovery that's been produced is non-sensitive.  So -- but

19   does that mean that 40 or 30 percent are sensitive?  I don't

20   know the exact number --

21            THE COURT:  Right.

22            MR. KENT:  -- but certainly, for example, we

23   produced to them the defendants' -- copies of the

24   defendants' own bank records.  Certainly, they are not

25   sensitive.  It's the defendants' own information.  But the

1   bank records for the victim in this case that we obtained

2   from the banks -- the victim's bank records, those are

3   sensitive.  It's certainly third-party information.

4   Information like that and certainly 302s and other sealed

5   court filings in this case, all of that information is

6   sensitive.

7           THE COURT:  All right.  All right.

8           MR. JACOBSON:  (Indicating.)

9           THE COURT:  Yes?  Yes, counsel?

10          MR. JACOBSON:  May I just address that point?

11          I have the partial index.  It's comprised of,

12  maybe, about -- I -- last I checked, about 50 pages.  And

13  just looking through it, it's -- the vast majority of the

14  documentation that's been produced recently -- has been in

15  recent productions is all highlighted and marked sensitive.

16  What I would most like to share with my client, you know,

17  outside of the office setting where we're sitting together

18  at a table and I'm watching to make sure that nothing

19  happens that's outside of the -- that's forbidden by the

20  protective order, I would most like to give to my client all

21  of the FBI 302s.  Government counsel has indicated that --

22  have indicated that they don't mind a family member of my

23  client, Tony Evans, who has pled and been sentenced, his

24  interview -- a 302 about his interview.  I mean, I -- there

25  aren't really too many other family members except perhaps

1    Gina Russell who's a spouse of one of the defendants.  So --

2    but I feel that if we could get an agreement from Government

3    counsel now on at least that category of production --

4              THE COURT:  Just for the 302s?

5              MR. JACOBSON:  The FBI 302s.

6              THE COURT:  Mr. Kent?

7              MR. KENT:  We can't agree to that.  The FBI 302s

8    include sensitive third-party information.  It includes

9    identifying information; it includes financial information

10   for third parties; and even the 302s with respect to Robert

11   Evans's wife, the danger that -- we don't want these -- this

12   information circulating around --

13             THE COURT:  Well, can --

14             MR. KENT:  -- amongst the family --

15             THE COURT:  -- can the 302s be redacted to --

16             MR. KENT:  We can do that, but -- and the reason

17   we put the protective order in place is we did not want to

18   have to go down the road of an exhaustive redaction process,

19   considering the volume of discovery.  So that would place a

20   huge burden on the Government to do -- to redact all these

21   documents, even if we just limit it to 302s.  The 302s have

22   notes and attachments to them, as well.  We'd have to engage

23   in that process for all these documents.  That's why we

24   preferred -- and we certainly -- I mean, the protective

25   order that was entered into was not opposed by any of the

1    defendants.  So -- but we do not oppose -- if they want to

2    share 302s with respect to any interviews that have been

3    conducted of these defendants or any statements that have

4    been made, that's fine, although I will note that Gina

5    Russell's 302s are considered sensitive and there are other

6    considerations which this Court is aware of concerning Gina

7    Russell and interactions with the family.

8            THE COURT:  All right.  Well, counsel, it sounds

9    as if you're going to have to file a motion for the relief

10   you're seeking.  I mean, I don't want to burden either side,

11   but it sounds like the medium that does exist, it's for you

12   to have a meeting with your client and be able to share the

13   sensitive information with your client.  That's a hardship

14   also because it means you've got to travel to New York --

15   well, you're in New York.

16           MR. JACOBSON:  I am in New York, Your Honor.

17           THE COURT:  Oh, there's no hardship, then.

18           MR. JACOBSON:  Well, and --

19           THE COURT:  What are we talking about?

20           (Laughter.)

21           MR. JACOBSON:  Judge, with this amount of

22   discovery, you know, it's -- it will require a substantial

23   amount of time for us to be sitting in a room together when

24   a more efficient way and a more -- and a better way for the

25   client to be able to --

```
 1              THE COURT:  Well --
 2              MR. JACOBSON:  -- assist in his own defense would
 3     be for him --
 4              THE COURT:  -- it's not a --
 5              MR. JACOBSON:  -- to take --
 6              THE COURT:  -- perfect world, you know?  I mean,
 7     you know, you've got an advantage over these other attorneys
 8     who have got to travel there or bring their clients down and
 9     they aren't squawking yet, you know?  So --
10              MR. JACOBSON:  Well, I --
11              THE COURT:  -- you know, if you think there's a
12     basis that might persuade the Court to grant that relief, go
13     ahead, file a motion, but --
14              MR. JACOBSON:  Certainly.
15              THE COURT:  -- I'm going to be reluctant to grant
16     it, I think.
17              MR. JACOBSON:  I --
18              THE COURT:  I mean, I haven't heard any -- well, I
19     shouldn't say it again because I'll -- then I'll start
20     hearing some squawking from everyone else at the table.
21     But, you know, have you talked to them and -- I mean, to the
22     attorneys about how they're dealing with this issue?
23              MR. JACOBSON:  I've mentioned it --
24              MS. ANTHONY:  Your Honor --
25              MR. JACOBSON:  -- to a couple of my colleagues.
```

```
1                MS. ANTHONY:  Your Honor --

2                THE COURT:  Why don't you come to the microphone.

3      Just one minute.

4                MS. ANTHONY:  Could a resolution --

5                (Brief pause.)

6                THE COURT:  Counsel, did you -- have you pro hac'd

7      into the case?

8                MR. JACOBSON:  This is the sponsoring attorney for

9      me.

10               MS. ANTHONY:  I'm the sponsoring attorney, and

11     I've been --

12               THE COURT:  Oh.  You're sponsoring him?  Okay.

13               MS. ANTHONY:  -- advising him in a very limited

14     way, but I do know about the case.

15               Would a resolution be that he could at least share

16     the -- what's written without any attachments that would not

17     have any financial records or anything --

18               THE COURT:  Talk to the Government.  You know

19     what?  And if you can't get the relief you seek, then file

20     an appropriate motion.

21               MR. JACOBSON:  Certainly.

22               THE COURT:  It's difficult for me to sit here and

23     determine, you know, what's the appropriate remedy.

24               MR. JACOBSON:  I understand.

25               THE COURT:  I'm sensitive to it, but I'm also
```

1    sensitive to the fact that there's extremely sensitive

2    information in those 302s -- they impact other people --

3    that the Government doesn't want shared with family members,

4    etcetera.  So --

5              MR. JACOBSON:  Your Honor, would a potential

6    solution be -- and I will certainly --

7              THE COURT:  I think a potential --

8              MR. JACOBSON:  -- follow up with research --

9              THE COURT:  -- solution is to file a motion --

10             MR. JACOBSON:  Yes.

11             THE COURT:  -- or talk with the Government.  If

12   the Government agrees with your suggestion, then go ahead

13   and submit a proposed order.  If the Government doesn't,

14   then I think I'm going to have to put you through the burden

15   of filing a motion asking for the very precise relief that

16   you're seeking.  Okay?

17             MR. JACOBSON:  Yes.

18             THE COURT:  Sorry about that, but it's just --

19             MR. JACOBSON:  No, no, that's not --

20             THE COURT:  -- it's complicated --

21             MR. JACOBSON:  -- a problem at all.

22             THE COURT:  -- and it's indeed sensitive.  So --

23             MR. JACOBSON:  Certainly.

24             THE COURT:  All right.

25             MR. JACOBSON:  All right, Judge.  Thank you very

```
 1    much.

 2              THE COURT:  All right.  Anyone else?

 3              MS. AMATO:  No.

 4              THE COURT:  All right.  Mr. Katzoff, anything

 5    further?

 6              MR. KATZOFF:  No, Your Honor.  Thank you.

 7              THE COURT:  All right.  Any other counsel?

 8              Counsel?

 9              MR. KENT:  No, Your Honor.

10              THE COURT:  All right.  It's good to see everyone.

11    Travel safely.  We have a next status hearing date and time.

12              All right.  Thank you.

13              MS. AMATO:  Thank you, Your Honor.

14              THE COURT:  Sure.

15              MR. VOMVOLAKIS:  Thank you, Judge.

16              (Proceedings concluded at 1:45 p.m.)

17              (Proceedings reconvened at 2:23 p.m.)

18              THE DEPUTY CLERK:  Your Honor, resuming criminal

19    case 18-103, United States of America v. Robert Evans, Corry

20    Evans, Archie Kaslov and Candy Evans.

21              THE COURT:  All right.  Counsel, I'm sorry that

22    you've been waiting.  I actually went down to the cafeteria

23    to get something to eat and no one was in the cafeteria, so

24    I just sat there and ate, and I didn't have my phone with

25    me.  So -- actually, it was very relaxing.  So anyway --
```

```
 1                    (Laughter.)
 2              Sorry.  Sorry everyone couldn't have joined me.
 3              So what's the problem?
 4              MR. KLEINMAN:  Your Honor, I got a salad from the
 5       cafeteria.
 6              THE COURT:  Did you really?
 7              MR. KLEINMAN:  It's the best deal in the city --
 8              THE COURT:  I was sitting --
 9              MR. KLEINMAN:  -- when it comes to salad bars.
10              THE COURT:  I was sitting in the corner with my
11       back to everyone, but it was peaceful.
12              MR. KLEINMAN:  My salad is in a bag on that chair.
13              THE COURT:  Really?
14              MR. KLEINMAN:  Your Honor, on July 22nd, the
15       Government filed an application to get DNA swabs from each
16       of these defendants.
17              THE COURT:  Right.
18              MR. KLEINMAN:  On -- and we noted Corry Evans's
19       opposition in that motion.  On September 3rd, the Court
20       issued an order granting the Government's request in part,
21       noting that there had been no opposition -- filed
22       opposition.  The agents took a DNA swab from Robert Evans
23       this morning -- or after the hearing today, but then
24       Mr. Jacobson, counsel for Corry Evans, indicated that he
25       objected to that being done and asked me if the Government
```

```
 1    would consent to late file.  I told him that --
 2              THE COURT:  Consent to what?
 3              MR. KLEINMAN:  To him late filing a motion in
 4    opposition.  There had been prior discussions in the case
 5    with respect to the motions schedule itself -- not the DNA
 6    motion, but the motions schedule -- where I represented the
 7    Government was not going to object if counsel needed
 8    additional time to file motions.  The Government would
 9    object on these facts, though, with the DNA.  As the
10    defendants have been made aware, there is a gun -- there
11    were a couple guns recovered as a part of this
12    investigation, and the Government has certainly considered
13    whether an additional charge might be warranted in this
14    particular case which the DNA certainly may or may not
15    facilitate, and so that's why we filed the motion in July
16    and certainly, you know, the Court gave ample time for
17    written responses.  The motion was pending for well over
18    five weeks, and so at this point in time with the agents
19    here, we do want to take buccal swabs from the defendants.
20    We think there's certainly every legal basis for -- to do it
21    which we spelled out in our motion.  So we would object to
22    any opposition at this point in time.
23              THE COURT:  All right.  Counsel?
24              MR. JACOBSON:  Your Honor, I would like to lead
25    with three apologies.  First of all, for taking you away and
```

1    bringing you back here and everybody else.  I --

2                THE COURT:  That's fine.  I finished my lunch.

3                MR. JACOBSON:  I meant to bring this up when we

4    were here before and it slipped my mind.

5                Second, for not filing an opposition in a timely

6    manner.  Your Honor issued an order on this matter on

7    September 3rd.  And I did want to apply to the Court for

8    leave to file an opposition as to my client who -- for whom

9    I think there is little basis for the Government to take his

10   buccal swab.  There -- in my reading of the papers, nothing

11   has been alleged linking my client to a firearm or asserting

12   any sort of a crime in which my client --

13               THE COURT:  Well, can you tell me --

14               MR. JACOBSON:  -- and a gun was involved.

15               THE COURT:  -- why no opposition was timely filed.

16               MR. JACOBSON:  I'm sorry?

17               THE COURT:  Can you state why no opposition to the

18   motion was filed.

19               MR. JACOBSON:  Your Honor, that's my fault, and

20   it's because -- it's the force of --

21               THE COURT:  Well, what's your defense to the

22   Government taking a swab?

23               MR. JACOBSON:  Well, I mean, I did want to put

24   that in a motion, because I think it's a --

25               THE COURT:  Well, I want to hear what -- I want

1    to -- I want you to make a proffer now.  What's your --

2                MR. JACOBSON:  So -- but --

3                THE COURT:  What's your --

4                MR. JACOBSON:  Okay.

5                THE COURT:  What's your defense to that?

6                MR. JACOBSON:  As I was saying, the Government

7    hasn't pled a basis for it.  They have not made any factual

8    allegations of my -- or -- of my client having or using a

9    weapon; of a weapon -- my client using a weapon in any -- in

10   the commission of any crime with which he's been charged.

11   He's been charged with bank fraud, money laundering, and

12   the -- there was a gun that was recovered from -- I believe

13   from his parents' house from beneath a mattress, and late in

14   -- not too long ago in this case, from one of the

15   co-conspirators, there was an allegation that one of the

16   co-defendants who's not my client had simply showed this gun

17   to a co-conspirator who is not a part of this case but who

18   is under a separate indictment.  That would be Hollie Nadel.

19   And -- if I'm not mistaken.  And so that is the factual

20   premise on which the Government feels that they can apply

21   for a buccal swab as to some of the co-defendants, but

22   that's not -- that doesn't relate to my client and there's

23   not been a factual allegation -- any factual allegations

24   made as to my client in relation to the firearm.  So I -- to

25   the extent that it would be an intrusion of his, you know --

1    that it would be a seizure --

2             THE COURT:  All right.  Let me just say this.  I

3    don't want to see the case again on an ineffective

4    assistance claim.  So today is Wednesday.  I want it filed

5    by noon -- your opposition -- on noon on Friday.  And I'll

6    give the Government until noon on Tuesday to file a reply.

7    If I -- and I'm going to rule on it next week.  And if I

8    decide -- if I determine that this is frivolous, then your

9    client's going to have to make a trip at his own expense

10   back to D.C. forthwith.  I'm not going to require the agents

11   to go to New York --

12            MR. JACOBSON:  That's --

13            THE COURT:  -- to get the --

14            MR. JACOBSON:  That's acceptable, Your Honor.

15            THE COURT:  All right.  I just -- I want to remove

16   an issue, but I'll give you a chance to late file it.

17            All right.  Anything else?

18            MR. JACOBSON:  I just apologize for a third time.

19   And thank you, Your Honor.

20            THE COURT:  All right.  Anyone?  Let's go through

21   this drill again.  Anyone going to put anything else on --

22   Mr. Katzoff?  Haven't heard from you.  How are you?

23            MR. KATZOFF:  Your Honor, my client just wishes to

24   join the request in case the Court agrees that it's not

25   appropriate --

```
 1                    THE COURT:  Sure.

 2                    MR. KATZOFF:  -- and --

 3                    THE COURT:  All right.  Anyone who wants to file a

 4        response, file it by noon on Friday, and the Government will

 5        file a reply by Tuesday.

 6                    MS. AMATO:  Your Honor, as to my client, we

 7        already -- I permitted him to give his DNA.  So --

 8                    THE COURT:  Sure.

 9                    MS. AMATO:  -- the Government already has his DNA.

10        If, for some reason, Your Honor were to rule that the

11        Government did not have a basis, then we would ask --

12                    THE COURT:  Then the Government can't use it

13        against anyone.

14                    MS. AMATO:  Thank you.

15                    THE COURT:  Yeah.  So --

16                    MS. AMATO:  Thank you.

17                    THE COURT:  -- it would be the same argument that

18        applies.

19                    All right.  Okay.  I'm almost fearful of asking

20        this question.  Anything else?

21                    (Laughter.)

22                    All right.  Everyone have a nice afternoon.  You

23        sure?  Nothing else?

24                    MS. AMATO:  Thank you.

25                    THE COURT:  All right.  Take care.
```

1          MR. KATZOFF:  Thank you.

2          MR. JACOBSON:  Thank you.

3          MR. KLEINMAN:  Thank you, Your Honor.

4          THE COURT:  You're welcome.

5          (Proceedings concluded at 2:31 p.m.)

6                    * * * * * * * * * * * *

7          CERTIFICATE OF OFFICIAL COURT REPORTER

8   I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify that

9   the above and foregoing constitutes a true and accurate

10  transcript of my stenographic notes and is a full, true and

11  complete transcript of the proceedings to the best of my

12  ability, dated this 17th day of November 2020.

13                         /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
14                         United States Courthouse
                           Room 6722
15                         333 Constitution Avenue, NW
                           Washington, DC 20001
16

17

18

19

20

21

22

23

24

25