```
                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,     .
                              .
        Plaintiff,            .  CR No. 18-0103-01 (TSC)
                              .
    v.                        .
                              .
GINA RITA RUSSELL,            .  Washington, D.C.
                              .  Monday, April 15, 2024
        Defendant.            .  11:08 a.m.
. . . . . . . . . . . . . . . .


                    HEARING ON VIOLATION
          BEFORE THE HONORABLE TANYA S. CHUTKAN
                UNITED STATES DISTRICT JUDGE



 APPEARANCES:

For the Government:          KONDI J. KLEINMAN, AUSA
                             U.S. Attorney's Office
                             601 D Street NW
                             Washington, DC 20530

For Defendant:               BRANDI J. HARDEN, ESQ.
                             Harden Law PLLC
                             400 7th Street NW
                             No. 604
                             Washington, DC 20004

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001



Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Good morning, Your Honor.  We're
 3   on the record in criminal case 18-103, United States of America
 4   versus Defendant 1, Gina Rita Russell.  We have Mr. Andre
 5   Sidbury from pretrial and Ms. Sherry Baker from probation.
 6   Starting with government counsel, please approach the podium and
 7   state your appearance for the record.
 8            MR. KLEINMAN:  Good morning, Your Honor.  Kondi
 9   Kleinman for the United States, and with me at counsel table
10   is Special Agent Michael Major and paralegal Sona Chaturvedi.
11            THE COURT:  Good morning.
12            MS. HARDEN:  Good morning, Your Honor.  Brandi Harden,
13   counsel on behalf of Ms. Gina Russell, who's present before the
14   Court.
15            THE COURT:  Good morning.  Good morning, Ms. Russell.
16   I think this is your first time in front of me in person.
17        All right, everyone.  Good morning.
18            PROBATION OFFICER:  Good morning, Your Honor.
19   Probation officer Sherry Baker, and I also have probation
20   officer Candice Brockton with us.
21            THE COURT:  Good morning.
22            PROBATION OFFICER:  Thank you.
23            THE COURT:  All right.  We are here -- well, first of
24   all, I guess some ministerial matters, Mr. Kleinman.  This case
25   as I understand it, which Judge Sullivan originally had, has
```

1  been unsealed.  Is that right?

2  MR. KLEINMAN:  The case itself has been unsealed.
3  Your Honor, the case itself is definitely unsealed.  However,
4  the plea documents were not sealed [sic].  Ms. Harden made a
5  request during the actual plea hearing that the hearing was open
6  but that the documents themselves be sealed.

7  There was some tension between a codefendant, Candy Evans,
8  and Ms. Russell, with respect to custody issues of kids, and at
9  the time I believe Ms. Harden was fearful that they would print
10 the documents out and hold them over Ms. Russell's head and sort
11 of taunt her with them.  I don't think that's a concern anymore,
12 so I certainly have no issue with the Court unsealing the plea
13 documents themselves.

14 THE COURT:  Well, taunting isn't usually a reason to
15 seal documents.  Ms. Harden, what's your position?

16 MS. HARDEN:  Yes, Your Honor.

17 Your Honor, I think that there are issues that are still
18 concerning Ms. Russell and her children.  Obviously, everybody's
19 been sentenced in this matter, so I don't know that I have the
20 same concerns, but I do still have concerns about any fear that
21 Ms. Russell has with respect to the other codefendants and her
22 children, that is, that they have custody of them.  So I would
23 ask the Court not unseal the documents.

24 THE COURT:  I won't unseal the plea documents yet, but
25 the presumption is always that the documents are open and

1  public.  And in this case in particular, given that Ms. Russell
2  is now detained and I will -- not hiding the ball here -- she's
3  going to stay detained, I'm not sure what the issue is.  But I
4  will keep them sealed for now, at least until the sentencing.
5  But all other filings, all other matters are public.
6      Now, Mr. Kleinman did file an *ex parte* motion for
7  revocation of Ms. Russell's release, and that is sealed.  Are
8  you objecting to unsealing that?
9          MR. KLEINMAN:  You've unsealed that, Your Honor.
10         THE COURT:  Oh, I did unseal that.  Okay.
11         MS. HARDEN:  Yeah, because I was harassing him, like
12 can he give me the *ex parte* filing, he finally did, and so I --
13         THE COURT:  Ms. Harden can be persistent.  All right.
14 Thank you.  And that's an understatement.
15     (Laughter)
16     So we're here on the government's motion to revoke
17 Ms. Russell's release pending sentencing.  This case is really
18 quite extraordinary.  I inherited it from Judge Sullivan and
19 it's really quite something.  I have not seen one of these
20 before.
21     She was indicted in April 2018 for her role in an extortion
22 scheme involving large numbers of her family and her ex-common
23 law spouse, all of whom have been sentenced except for
24 Ms. Russell, who's pending sentencing.
25         As part of the extortion scheme, Ms. Russell performed a

1    psychic reading on a woman who paid Ms. Russell increasing
2    amounts for her so-called spiritual work.  The woman, Ms. Nadel,
3    obtained loans to purchase cars and paid rent for housing in
4    New York and California used by Ms. Russell and her family.
5    Ms. Nadel paid for these services and purchases by first
6    obtaining money from her father, and when her father refused to
7    provide any more money, Ms. Russell encouraged Ms. Nadel to
8    provide sexual services to earn additional money.  Or, I'm
9    sorry, sensual massage services.
10       From late 2016 to early 2017, Ms. Russell conspired with
11   members of her ex-spouse's family to extort and defraud Nadel's
12   massage customers and to obtain money.  Ms. Russell instructed
13   Nadel what to tell these men to explain her increasing demands
14   for money.  One mark, one man in particular, ended up embezzling
15   more than $4 million from his employer as a result of this
16   scheme.
17       Ms. Russell was arrested in April 2018 and detained
18   following her arrest.  In September 2018 Judge Sullivan granted
19   Ms. Russell's request for pretrial release, and she was
20   eventually released from a halfway house to live in California
21   where she remained until last month.
22       I note that the Pretrial Services report indicates that
23   Ms. Russell has moved nine times.
24       The very first condition of Ms. Russell's release prohibits
25   her from violating federal, state, or local law while on

release.  And that's ECF No. 109.  The order also notes that violating any release conditions may result in the immediate issuance of a warrant for her arrest, a revocation of her release, an order of detention, and a prosecution for contempt.

On July 30, 2019, Ms. Russell pleaded guilty to interference with interstate commerce by extortion, and aiding and abetting.  As part of her plea agreement, the government agreed it would not seek a change in her release conditions pending sentencing, but reserved the right to move to change her release conditions, including requesting detention pending sentencing if she engaged in further criminal conduct.

Ms. Russell agreed that any violation of her release conditions could result in the government filing an *ex parte* motion requesting a bench warrant for her arrest, and that she be detained without bond pending sentencing.  That has happened.

I was assigned Ms. Russell's case in October of 2022 and have sentenced at least one, I think two of the defendants in this case, so I'm familiar with the background facts concerning this case.  We previously set this case for sentencing in May, although that date has since been vacated.

On March 16, I received an *ex parte* motion -- it's now been disclosed to the defense -- from the government asking me to issue a bench warrant for Ms. Russell's arrest.  The motion proffered evidence that Ms. Russell has been engaged in the same kind of criminal conduct while on release in California, and

1    that conduct is set forth in the *ex parte* motion for revocation.

2    Suffice it to say that Ms. Russell has been accused of
3    approaching a young woman, engaging in psychic readings with
4    her, persuading her to pay her large sums of money, and
5    persuading her to get large sums of money from her father.
6    And then when that money dried up, to start performing again
7    sexual work to obtain money for Ms. Russell.  So very strikingly
8    similar allegations to the underlying facts in the case for
9    which she is pending sentencing.

10   I granted the government's request and issued a bench
11   warrant on March 18.  Ms. Russell was arrested on March 19.
12   She appeared before a magistrate judge in California and
13   appeared before Judge Harvey in this court on April 2.  So we're
14   now here to conduct a revocation hearing pursuant to 18 U.S.C.
15   § 3148(b) and Federal Rule 32.1(b).

16   So let me ask you, Ms. Harden, is Ms. Russell going to
17   waive the rights afforded under Rule 32.1(b)(2) and concede
18   revocation, or do you challenge it?

19         MS. HARDEN:  No, Your Honor.

20         THE COURT:  All right.  Then does she deny the
21   charges?

22         MS. HARDEN:  Yes, Your Honor.

23         THE COURT:  Okay.  And has she been charged in
24   California?

25         MR. KLEINMAN:  She has not been charged in California,

1    Your Honor.

2             THE COURT:  Okay.  Now, are the parties prepared to
3    have an evidentiary hearing today or are you asking for a
4    continued date for that, because I can tell you I'm not inclined
5    to release Ms. Russell on any kind of bond pending that hearing.

6             MS. HARDEN:  Your Honor, I guess we are asking for
7    another date unless the government's prepared to put on evidence
8    today.

9             MR. KLEINMAN:  Your Honor, we had planned to proceed
10   by proffer, and we'd just set forth all of the allegations in
11   our motion.  And in addition to that, I also handed Ms. Harden
12   some surveillance photos that we received from Bank of America
13   last week that shows the defendant using the victim's ATM card.

14        We've received quite a few photos as a result of a grand
15   jury subpoena.  Most of them were of the victim using her own
16   card, taking out money, but there were images of Ms. Russell,
17   there was one image of Ms. Russell's sister, there were images
18   of Ms. Russell's son, and then there was an image of another man
19   whose identity we're not completely certain of at this point in
20   time.  But I certainly can submit that exhibit to the court.

21            THE COURT:  Yes.  If you could submit those exhibits
22   and file them.

23            MS. HARDEN:  Your Honor, could I have a brief
24   indulgence for one second?

25            THE COURT:  Yes.

1           MS. HARDEN:  I'm not sure -- I haven't been here in a
2     while.  Is there a white noise, Your Honor?
3           THE COURT:  Oh, sorry.  Yeah.
4           MS. HARDEN:  Thank you.
5        (Defense conferring.)
6           THE COURT:  Hold on a second, Ms. Harden.  While
7     you're talking to Ms. Russell, can you hand up...
8        (Government tenders documents to the Court.)
9        (Defense conferring.)
10          MS. HARDEN:  Thank you, Your Honor.  Ms. Russell's
11    going to concede detention.
12          THE COURT:  All right.  Then I do find that there is
13    probable cause to believe that Ms. Russell has committed a
14    federal, state, or local crime while on release, including but
15    not limited to conspiracy to commit wire fraud.
16       Therefore, I find that there is therefore a rebuttable
17    presumption that no condition or combination of conditions will
18    assure that Ms. Russell will not pose a danger to the safety of
19    any other person in the community; and in light of this
20    presumption, based on Ms. Russell's concession of detention and
21    on the factors set forth in 3142(g), I find that there are no
22    conditions or combinations of conditions of release that would
23    assure that Ms. Russell will not flee or pose a danger to the
24    safety of any other person or the community.
25       Given my finding of probable cause and the government's

1      allegations and the fact that Ms. Russell is pending sentencing,
2      that is not a difficult conclusion for this court to reach.  So
3      I will enter an order of revocation and detention following this
4      hearing.  If the government could file a proposed order by
5      Wednesday, I'd appreciate it.
6                 MR. KLEINMAN:  Will do, Your Honor.
7                 THE COURT:  And then we need to set a sentencing date
8      for Ms. Russell.  Do you need additional time, Ms. Baker, for
9      the PSR?
10                MS. HARDEN:  I think I filed something, Your Honor,
11     with respect to those dates.
12                THE COURT:  You probably did.
13          (Probation conferring with parties.)
14                PROBATION OFFICER:  Your Honor, I just spoke with both
15     parties, and both are in agreement for a mid-July sentencing
16     date.
17                MS. HARDEN:  I'm sorry, Your Honor.  I did agree to
18     that, but I thought she was talking about something else, and
19     I'm not really available from 7 to 31.
20                THE COURT:  July 7th to 31st?
21                MS. HARDEN:  That's correct, Your Honor.  Between the
22     7th and the 20th, depending on the time, I could do the
23     sentencing.  But then I'm out of the country from 24 to 31.
24                THE COURT:  Well, there's still a possibility, growing
25     stronger by the day, that I may be out of the country too from

1    the 31st.  But I don't know.  Why don't we try and set it
2    between the 7th and the 20th since you said you may be able to
3    do the sentencing then.
4              MS. HARDEN:  If I could have a brief indulgence,
5    Your Honor, I think I could possibly do, depends on if it's good
6    for the court.
7              THE COURT:  I'm available.
8              MS. HARDEN:  July 18?
9              THE COURT:  Mr. Kleinman, I'm available on the 18th.
10   That's a Thursday.  Are you available on July 18th?
11             MR. KLEINMAN:  That looks good with me, Your Honor.
12             THE COURT:  All right.  Let's set it down for
13   sentencing July 18th.  What time, Ms. Harden?
14             MS. HARDEN:  Brief indulgence.  I'm trying to figure
15   out the time, if I can just have one second, Your Honor.
16             PROBATION OFFICER:  Your Honor, I don't mean to throw
17   a wrench in.  I'm actually on -- is the court available on the
18   15th or the 16th?
19             THE COURT:  I am.  My July is wide open; it's
20   Ms. Harden who's got the packed schedule.
21             MS. HARDEN:  Yes.  Let me just check.
22             MR. KLEINMAN:  The 15th is fine.  The 16th might be
23   tricky for me.
24             THE COURT:  I could do the 15th.
25             MS. HARDEN:  A brief indulgence for just one second,

```
 1    Your Honor.  I'm looking at the schedule...
 2          Actually, I'm not available at all on the 15th, Your Honor.
 3              THE COURT:  16th?  Oh, Mr. Kleinman can't do the 16th.
 4    Any day other than the 18th, Ms. Harden?
 5              MS. HARDEN:  Yes.  I think -- so I could do the
 6    afternoon, Your Honor, after 2:00 on Wednesday, the 17th.
 7              MR. KLEINMAN:  Tuesdays and Wednesdays unfortunately
 8    are very difficult for me.  Could we do the end of June?
 9              MS. HARDEN:  I would just ask to move to August.
10              THE COURT:  August?
11              MS. HARDEN:  Yes, Your Honor.
12              THE COURT:  Well, that's going to be difficult for me.
13    If I do get a chance to travel, I will be gone till the 13th,
14    which means the 14th.  You don't have the end of June?
15              MS. HARDEN:  Well, I start a trial on the 20th.
16    So I think the answer is no because --
17              THE COURT:  How long is that case going to be?
18              MS. HARDEN:  Maybe only a week.  But it's not going
19    to start until the 24th with jury selection.
20              THE COURT:  Is it in this court?
21              MS. HARDEN:  It is not.
22              PROBATION OFFICER:  If the Court really wants to go
23    with the 18th, it just means I won't be present.  It will be
24    another officer standing in.
25              THE COURT:  Much as I feel you are essential,
```

```
 1      Ms. Baker, I'm willing to --
 2              PROBATION OFFICER:  Okay.
 3              THE COURT:  Because if I have questions I can talk
 4      to you before.
 5              PROBATION OFFICER:  And I will send a notice ahead
 6      of time.
 7              THE COURT:  Okay.  Let's do it on the 18th.
 8              MS. HARDEN:  Can we just do the morning of the 18th,
 9      Your Honor?
10              THE COURT:  Yes, we can.  10:30?
11              MS. HARDEN:  10:30's great.
12              THE COURT:  Mr. Kleinman?
13              MR. KLEINMAN:  Perfect.
14              THE COURT:  All right.  Okay.  This matter is set down
15      for sentencing on July 18 at 10:30 a.m.  Ms. Russell will be
16      held without bond.  All sentencing materials are due a week
17      before sentencing, including any letters, certificates.  If the
18      parties seek to have any witnesses, they need to inform the
19      Court and the other side also a week before and get leave from
20      the Court.
21          So that would mean -- well, you all know what a week is.
22      The sentencing is Thursday, July 18.  All sentencing materials.
23              MS. HARDEN:  Your Honor, can the government file its
24      sentencing memoranda on the 11th and then I file mine on the
25      12th?  I would just ask for an opportunity to respond to what
```

1   they're saying.
2               THE COURT:  Do you have any objection to that,
3   Mr. Kleinman?
4               MR. KLEINMAN:  No, Your Honor.
5               THE COURT:  All right.  That's fine.
6        Thanks for being here, Mr. Sidbury.  Haven't had to have
7   you, but thank you for being here.  Andre Sidbury from Pretrial
8   Services is also here.
9        All right.  Anything else I need to deal with right now?
10              MS. HARDEN:  Did the Court want to hear from
11  Mr. Sidbury that Ms. Russell was in compliance before the
12  arrest?
13              THE COURT:  No.
14              MS. HARDEN:  Sounds like it's all taken care of then.
15              THE COURT:  She went to California and...
16              MS. HARDEN:  I was just wondering if you wanted to
17  hear it.
18              THE COURT:  That's fine.  Anything further from either
19  side?
20              MS. HARDEN:  I do have one other request, Your Honor.
21       Your Honor, I can't possibly get back and forth to Northern
22  Neck.  So I'm going to ask the Court order Ms. Russell to CTF.
23  This was a problem early on.  It's going to be extremely
24  difficult.  It's just not --
25              THE COURT:  You know, I can't order anybody to be

1    moved anywhere.  I can only make requests.  Ms. Baker?
2            PROBATION OFFICER:  Your Honor, I can speak to that.
3    From Northern Neck we schedule those interviews by phone.  So
4    we've made arrangements with Northern Neck that we can do the
5    interview by phone, so there shouldn't be a problem.
6            MS. HARDEN:  That would be great if that was the only
7    thing I needed to do is just that one interview.  Did the Court
8    say the Court can't make recommendations either?
9            THE COURT:  I can, but it's really up to the marshals
10   where prisoners are held.  They have a lot of things they have
11   to consider, there are a lot of balls in the air they're
12   juggling, especially the January 6 cases.  And I can recommend
13   that she go to CTF, but I'm not going to go any further than
14   that, especially since, as Ms. Baker said -- I know you
15   obviously want to meet face to face and discuss things, but why
16   don't you try -- I'll make the recommendation, and if you're
17   having an inability to see her, I'll see what we can do.  CTF as
18   you know is full of January 6 defendants also.
19           MS. HARDEN:  Yes.  And let me just be clear.  I'm
20   really talking about the distance.  So I'm saying CTF because
21   that's where women are housed.  But if the Court says D.C. jail,
22   I'm fine with that also.  It's not that I'm just making the
23   request for CTF, I just think that that's where women are
24   housed.  But if the order says D.C. jail or CTF, I'm fine with
25   that.

```
 1            THE COURT:  All right.  I'll make a recommendation
 2   that Ms. Russell be housed at any of the detention facilities --
 3   either the Central Detention Facility or CTF at the D.C. jail.
 4   But that's all I'm willing to do at this point.
 5            MS. HARDEN:  Very well.  Thank you, Your Honor.
 6            THE COURT:  Anything else, Mr. Kleinman?
 7            MR. KLEINMAN:  No, Your Honor.  Thank you.
 8            THE COURT:  All right.  Thank you all.
 9       (Proceedings adjourned at 11:29 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*/s/ Bryan A. Wayne*
Bryan A. Wayne